# AURORA AND ERNEST W. BENSON v. H. F. HOENIG AND ANOTHER.[1]

May 6, 1949.

Nos. 34,916, 34,917.

---

[1]Reported in 37 N. W. (2d) 422.

*Howard I. Donohue,* for appellant.

*Ryan, Ryan, Ryan & Ebert,* for respondents Aurora and Ernest W. Benson.

*Dell, Rosengren & Rufer,* for respondent Rose Gaboury.

KNUTSON, JUSTICE.

This case involves an appeal from orders of the trial court denying motions for judgment notwithstanding the verdicts or, in the alternative, for a new trial in two actions consolidated for trial. In one of these actions, Aurora Benson seeks recovery for personal injuries sustained while riding as a guest passenger in an automobile driven by defendant Rose Gaboury. In the other action, Ernest W. Benson seeks recovery for medical and hospital expenses and for loss of the comfort and services of his wife on account of her injuries. At the close of the trial, the court directed a verdict in favor of Rose Gaboury, and plaintiffs in both actions recovered verdicts against defendant H. F. Hoenig.

Defendant Hoenig is now and for about 20 years has been engaged as a funeral director at Brainerd, Minnesota. On December 10, 1946, at about 10 a. m., he was driving the lead car, containing himself and six pallbearers, in a funeral procession composed of some 12 to 15 cars from Brainerd to St. Mathias Church, located about 12 miles southwest of Brainerd in a rural area. To reach St. Mathias Church, the procession traveled along a graveled county highway in a southerly direction. The church can be reached from this county highway by either of two township roads, both running in a westerly direction. The most northerly of these is referred to as the Corey road and is the best and most commonly used of the two. The other road is one mile south of and parallel to the Corey road.

Hoenig intended to turn west on the Corey road. He had traveled the roads involved many times and was thoroughly familiar with them. For some reason, he arrived at the Corey road before he realized he was there and too late safely to make the turn. When he realized that he was at the intersection, he applied the brakes of his car without giving any warning to those following in the procession, except such as is given by the red lights at the rear of his car, which go on when the brake pedal is depressed and which were seen by the driver of the car immediately behind him, but by none of the others. Hoenig brought his car to a stop and, after some discussion with others in his car, proceeded on south to the next road and from there west to the church.

The Corey road is approximately 23 feet wide. The front of the Hoenig car was entering the intersection with the Corey road when Hoenig applied his brakes, and the car was brought to a stop with the rear end of the car at about the south edge of the Corey road or the south ditch bordering the road. It was stopped approximately in the center of the right half of the road on which it was traveling and without turning either to the right or left. The Hoenig car was a large seven-passenger automobile. Immediately following the first car came the hearse, which was driven by an employe of Hoenig, and the other cars followed in succession. The car driven by Rose Gaboury, in which Aurora Benson was riding, was the fourth from the last car in the procession.

When the Hoenig car stopped, the hearse pulled to the left, intending to come alongside the Hoenig car, but before it arrived there the procession continued on. All other cars succeeded in stopping without mishap, including the Gaboury car. Mrs. Gaboury stopped without mishap about four feet behind the car in front of her and almost immediately her car was struck in the rear by the car following, driven by Ed Tougas. In attempting to stop, the Tougas car skidded on a stretch of icy road for about 10 or 12 feet and then ran into the rear of the Gaboury car. Mrs. Benson, who was riding in the front seat of the Gaboury car, was thrown against the rear of the seat and sustained the injuries for which she seeks

recovery. Following the Tougas car was one driven by Harry Mangan. He managed to miss the Tougas car by turning to the right. Following the Mangan car was another driven by M. E. DeRosier. He turned to the left and thereby missed the Mangan car. Mrs. Gaboury gave no signal before stopping except such as would be given by the rear light when the brake pedal was depressed.

As the procession moved south on the county highway, it traveled about 25 to 30 miles an hour. No traffic intervened so as to require a stop, and none of the drivers of any of the cars in the procession had any reason to suppose that a stop would be made at that point.

The appeal raises substantially these questions:

(1) Was there any evidence of negligence on the part of defendant Hoenig?

(2) Was it error to direct a verdict in favor of defendant Gaboury?

(3) Assuming that Hoenig was negligent, was the negligence of Tougas an intervening cause?

(4) Did the court err in instructing the jury on the question of proximate cause?

(5) Were the verdicts excessive?

■ Defendant Hoenig contends that, inasmuch as he warned the car immediately following him of his intention to stop by means of the red lights on the rear of his car that were lighted when he stepped on the brake pedal, he did all that was necessary. A determination of negligence and proximate cause must always be based upon the facts and circumstances existing in the particular case. The pertinent inquiry here, insofar as Hoenig is concerned, is what duty the lead car in a funeral procession owes to those following insofar as giving them a warning of an intention to stop, turn, or otherwise deviate from a course of travel that would ordinarily and normally be followed.

It is only natural that cars following a funeral director in a procession look to him for leadership. He sets the pace. He determines how fast to drive, what route to take, when to turn, and when to stop. Here, the automobiles in the procession knew what

the destination was. There was no occasion for any stop until the destination was reached, absent interference from other traffic. We have had occasion to pass upon the reciprocal duties of leading and following cars in cases not involving a procession of this kind. Where each car is acting on its own initiative, there are reciprocal duties on the part of the car leading and the car following. The statutes principally involved are M. S. A. 169.19, subds. 6[2] and 7.[3]

In Landeen v. DeJung, 219 Minn. 287, 290, 17 N. W. (2d) 648, 651, we said:

"* * * It is negligence for a motorist who knows, or by the exercise of ordinary care should know, that another is following closely behind, to fail to warn the driver of the rear car by appropriate signal of his intention to stop. Christensen v. Hennepin Transp. Co. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945. As pointed out in the Christensen case, the theory underlying such a statute is that the knowledge of a driver of a car to the rear of the presence on the highway of a car forward is not in itself adequate to enable him to guard against a rear-end collision if the forward car should stop suddenly without warning, and that a warning would enable the car in the rear to guard against the stop by bringing his car to a stop with the forward one."

See, also, Cardell v. Tennessee Elec. Power Co. (5 Cir.) 79 F. (2d) 934; Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758; Peterson v. Minneapolis St. Ry. Co. 226 Minn. 27, 31 N. W. (2d) 905.

---

[2]"No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear unless there is a good and sufficient reason for not being able to do so."

[3]"The signals herein required shall be given either by means of the hand and arm or by a signal lamp or signal device of a type approved by the commissioner, but when a vehicle is so constructed or loaded that a hand and arm signal would not be visible in normal sunlight, and at night both to the front and rear of such vehicle, then the signals must be given by such a lamp or device."

In a funeral procession, it is natural for vehicles to travel in close formation. Our statutes give them a right of way over other traffic if they do so. Section 169.20, subd. 6.[4] While this fact does not relieve the driver of any vehicle in such procession from exercising due care, it is a circumstance that must be kept in mind in considering the negligence of the driver of the lead car. None of the cars, aside from the hearse immediately following the Hoenig car, could see the red lights on the rear of his car. The only warning they had was such as they obtained by watching the car immediately preceding them. Under the circumstances, we believe that the jury was justified in finding that Hoenig was negligent in coming to an unexpected and abrupt stop in the center of the traveled portion of the highway on which the procession was traveling without giving sufficient warning to the vehicles following. By so doing, he set in motion a sequence of events that started with his abrupt stop and was transmitted from car to car, ultimately resulting in the collision in which Mrs. Benson was injured.[5]

█ The court held as a matter of law that there was no evidence of any negligence on the part of Mrs. Gaboury. Hoenig contends that this was error.

Mrs. Gaboury was traveling about four or five car lengths behind the car in front of her. Upon seeing the car in front slow down, she applied her brakes in such a manner that her car came to a stop about four or five feet behind the car preceding her. Had she stopped more suddenly, the danger of a rear-end collision would have been increased. It is difficult to see what she could have done that she did not do. The time interval was short. The weather was cold, and the vehicles were traveling with their windows closed. To expect her to roll down her window and extend her arm, giving

[4] "When any funeral procession identifies itself by using regular lights on all cars and by keeping all cars in close formation, the driver of every other vehicle, except an emergency vehicle, shall yield the right of way."

[5] See, Gleason v. Cunningham, 316 Ill. App. 286, 291, 44 N. E. (2d) 940; Richmond Coca-Cola Bottling Works, Inc. v. Andrews, 173 Va. 240, 3 S. E. (2d) 419.

warning of an intention to stop, would have been to expect almost the impossible. She did all she could. When she saw the car preceding her slow down, she stepped on the brake. The car following her had the same warning of her intention to stop as the hearse following the Hoenig car had. Hoenig proposes the novel argument that he did all that he was required to do by giving warning to the car following him through the medium of the lights on the rear of his car, without extending his arm, while at the same time he charges that Mrs. Gaboury was negligent for not doing more. Hoenig, being in the lead, had the opportunity of giving adequate warning and of stopping at a rate of speed that would have given the others an opportunity safely to come to a stop. Mrs. Gaboury was compelled to stop unexpectedly, without warning, within the distance separating her from the car immediately preceding her. The opportunity of each of these two cars to give a warning to the one following was not the same.[6] We believe that there is no evidence of any negligence on the part of Mrs. Gaboury and that the court correctly instructed the jury to return a verdict in her favor.

■ Hoenig next contends that the court's instruction relative to his negligence is erroneous. This contention is predicated upon the argument that Hoenig's negligence must be based upon failure to give warning of intention to stop. That is not necessarily so. He could have done one of several things. He could have pulled over to the right side of the road, thereby indicating an intention to stop; he could have taken more distance in which to stop; or he need not have stopped at all. There was no contact between the Hoenig car and that in which Mrs. Benson was riding; hence, Hoenig argues, his negligence was not the direct and immediate cause of the accident. Hoenig also contends that the negligence of Tougas was an intervening force, without which the accident would not have occurred.

The instruction given by the court respecting proximate cause was:

---

[6]See, Zwilling v. Harrison, 269 N. Y. 461, 199 N. E. 761.

"By proximate cause we mean that which causes it directly or through a natural sequence of events and without the intervention of any other independent or efficient cause."

Under the circumstances in this case, we believe that the instruction given was sufficient without any further explanation. We do not agree that Hoenig's negligence was not the direct cause of the accident. By abruptly stopping when all cars in the procession had reason to believe that they could continue, Hoenig set in motion a sequence of events which brought about the accident. The negligence of Tougas, if such there was, resulted from the original negligence of Hoenig. It was not an independent or efficient force operating by itself. We had occasion to consider some of the elements of proximate cause in Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788; Seward v. Minneapolis St. Ry. Co. 222 Minn. 454, 25 N. W. (2d) 221; and Robinson·v. Butler, 226 Minn. 491, 33 N. W. (2d) 821. In each of these cases the facts differ, but the general rules there stated are applicable here. We hold that the negligence of Tougas was not such an intervening cause as to insulate the original negligence of Hoenig.

█ Hoenig also complains of the court's instruction regarding the definition of negligence. After reading some of the statutes involved to the jury, the court gave the following instruction:

"The violation of any such law or statute is prima facie evidence of negligence. Prima facie means that it is not conclusive and that it is only controlling in the absence of other evidence which repudiates the assumption that such acts are not reasonable and prudent. *If you find, considering the conditions of the highway, weather conditions and all other conditions then existing, that the defendant violated any of the laws I have mentioned, or that the defendant failed to exercise the care an ordinarily prudent person would exercise in the circumstances, then it would be your duty to find the defendant is negligent.*" (Italics supplied.)

The portion of the instruction complained of is italicized above. Reading that portion alone, the instruction would be incorrect, since

a finding that Hoenig violated one or more of our traffic laws does not compel a finding of negligence, but by reading the whole instruction together we believe that the jury would not be misled.

Mrs. Benson recovered a verdict of $4,000; her husband one of $1,000. The medical testimony showed that prior to the accident Mrs. Benson had an arthritic condition in her back. It was not giving her any particular trouble. The testimony of the medical witnesses is that the injury received in this accident "lighted up" the arthritic condition or activated it and that Mrs. Benson would in all probability have difficulty from this condition permanently. After the accident she spent 25 days in the hospital. Medical expenses amounted to about $175 and hospital expenses $254. We have frequently stated that in considering the excessiveness of a verdict we must keep in mind the reduced value of money, and when we do so we do not believe that the verdicts were excessive.

Affirmed.

