Walter SPELLS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17348.

United States Court of Appeals
Fifth Circuit.

Feb. 18, 1959.

Rehearing Denied March 23, 1959.

Bernard A. Golding, William F. Walsh, Houston, Tex., for appellant.

William B. Butler, U. S. Atty., Dan Kennerly, Asst. U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

Appellant Walter Spells and two others were tried and convicted for conspiring to violate the narcotics laws from October 15, 1957 to February 1, 1958 by receiving, concealing, possessing, transferring and selling marihuana in violation of the laws of the United States referred to in the indictment, which consisted of six counts. Appellant was convicted along with the two others under the conspiracy count, and was also convicted under Counts Two and Three charging him with acquiring three and one-half pounds of marihuana and transferring to a named person, and Count Six for acquiring five and one-half pounds of marihuana, in each instance without paying the required taxes and not in pursuance of the required written orders.

It will not be necessary to set out the facts, as the other two defendants did not appeal and appellant does not contend that the evidence was not sufficient to warrant his conviction. He bases his appeal upon three points, arguing that the court below erred in these particulars: that the court did not instruct the jury as to all of the essential elements constituting the offenses charged; that the court erred in stating to the jury that the matter was one of extreme importance; and, finally, that the court erred, upon the *voir dire* examination, in refusing appellant's request that the jurors be asked if they had ever sat on a narcotics case.

■ Considering first the arguments relating to the court's charge, we find them without merit. The charge of the court was unusually full and explicit and embraced many written requests made by appellant. The statute upon which each of the counts was based was read to the jury and the court went into detail in explaining, by illustration and otherwise, just what each statute meant as applied to the facts of the case. The evidence introduced by the Government was clear and, if believed by the jury,—none being offered on behalf of appellant and his codefendants—no conclusion could have been reached except that the defendants were guilty as charged. The jury had some uncertainty about the requirements for the affixing of stamps, and came back to the court for further instruction. The court read again from the statutes and was advised by the jury that the explanation was sufficient, and no exception was taken to that portion of the charge. Appellant did not point out any respect in which the trial court failed to give all of the written instructions requested by him, and did not except to the alleged failure of the court to charge properly and adequately the ingredients of the crimes charged. We think that the charge was adequate and that this contention is without substance.

■ The same is true of the portion of the charge excepted to by appellant, which is set out in the margin.[1] This was the last paragraph of a charge covering fourteen pages in the record, in which the law and its application to the facts before the jury had been fully outlined. The jury had been charged that the government carried the burden of proving guilt beyond a reasonable doubt, that the accused had the right not to testify, free from any presumption based thereon, and the court had been quite liberal in protecting their rights. The language used certainly did not indicate that the judge had or expressed any idea as to whether the defendants were guilty or were innocent. We think that the criticism of the charge is entirely without substance.

■ The argument that the court below erred in refusing to ask the prospective jurors whether they had sat on

---

[1] "I need not tell you gentlemen that this is a matter of extreme importance. You should give it your most careful consideration. I have a form of verdict prepared for you, providing a place in which you will insert your findings as to the guilt or innocence of each of the defendants on each count within which that defendant is charged. It will be signed on the blank line at the bottom by the foreman. * * *"

a narcotics case had a firmer basis. It is settled that the court should, upon request, make a sufficient inquiry as to the background and attitudes of the jurors to enable the litigants, not only to challenge for cause, but to exercise their peremptory challenges. An examination of the facts should be made to determine whether the question was relevant and important, whether the information had been furnished in response to other questions by the court, whether the litigant exhausted other means of obtaining the desired information, and whether there was sufficient prejudice manifest to warrant the appellate court in declaring that the trial judge had abused its discretion and committed reversible error.

The case had been set down for trial with the acquiescence of all parties more than three weeks before the trial was begun. All three defendants had waived venue and agreed that the case be tried at Houston. The jury was selected and sworn in on Monday, March 24th, and the trial was entered upon the afternoon of Tuesday, March 25th.

On the *voir dire* the court asked the usual questions, explaining the nature of the charges against the three defendants, asking whether any jurors had heard anything about the case or knew any of the defendants or their lawyers, whether any of them had been employed as law enforcement officers, and whether any member of the panel felt, for any reason, that he could not try the case fairly and impartially, and then put this question to the prospective jurors:

"This is a narcotics case. If anyone feels that he or she could not try these defendants fairly and impartially, simply by reason of the fact that the offenses which it is alleged they have committed were violations of the narcotics laws, I would like to know that fact. Does anyone have any such feeling of bias or prejudice against narcotics that they couldn't afford these defendants a fair and impartial trial?"

Appellant, joined by the other defendants, asked that the court inquire whether any prospective juror had ever studied law, or had ever sat as a juror in a narcotics case. The court asked the former question, but declined to ask the latter, presumably because it felt that it was embraced within the general question quoted above.

As far as the record goes, the appellant had ample opportunity both before and after the selection of the jurors to determine from the court records and from outside inquiry whether any of said jurors had sat on narcotics cases. There was no showing that any juror had sat on a narcotics case previously, or that appellant made any inquiry to determine whether this was true, or what peculiar relevance the question had to the question of the fairness and impartiality of the jurors.[3]

2. Appellant makes a number of statements in his brief such as the following:

"The average juror, * * * undoubtedly pays little, if any, heed to the fact that irrespective of how disgusting the alleged criminal offense may be, the accused must be convicted in accordance with the strict standards of criminal procedure as set forth in the United States Constitution [Amend. 6] and relevant rules. Further, that these Constitutional guarantees governing civil liberties, and the right to a fair and impartial jury trial, block representatives of the Government from lawless incursions on the right of an accused. Otherwise, 'the American method' remains an empty boast. Always, the burden imposed upon the Government in such cases is unchanged, no matter how vile or vicious the alleged offense may happen to be.

"It was in such setting that this litigation was aired and, it is submitted, irrespective of the area of where such a trial is conducted, the same situation undoubtedly exists.

"Because of the existence of such probable improper influence, the Appellant desired the Court to inquire of the prospective tailsmen [sic] as to whether or not they had ever served as a juror in a narcotics case. * * *

" * * * And certainly the existence of a disqualification as to any of the jurors in this case could not have been reached and determined by diligence

The questions that should be asked upon a *voir dire* examination is a matter of discretion; and that discretion belongs to the trial court, not to us. Ours is the duty only to examine the record to determine whether that discretion has been abused.[3]

Under the circumstances detailed, we think that the question propounded to the prospective jurors by the court below concerning prejudice in narcotics cases embraced the one it refused to propound. Especially is this true where there is no showing at all that appellant was prejudiced in any way by the action of the court below.

Under the facts of this case, we feel that the language used by the Supreme

---

otherwise exercised by Appellant and his counsel, since, until the list was handed to Appellant on the very morning that selection of the jury was demanded by the Trial Court, Appellant and his counsel had no means at their disposal to determine who were the jurors, * *; in fact, nothing was known to Appellant and his counsel concerning any of those summoned as jurors to serve in this cause. * * *."

Of such a situation, wherein the Supreme Court was passing upon a conviction of a narcotic violation by a jury all of whom worked for the United States, the Court said (Frazier v. United States, 1948, 335 U.S. 497, 503, 69 S. Ct. 201, 205, 93 L.Ed. 187):

"Apart from the objection that this challenge came too late, * * * it is without merit. It consists exclusively of counsel's statements, unsworn and unsupported by any proof or offer of proof. The Government did not explicitly deny those statements. But it was under no necessity to do so. The burden was upon the petitioner as moving party 'to introduce, or to offer, distinct evidence in support of the motion.' Glasser v. United States, 315 U.S. 60, 87, 62 S.Ct. 457, 472, 86 L.Ed. 680. See also, Smith v. State of Mississippi, 162 U.S. 592, 16 S.Ct. 900, 40 L.Ed. 1082; Tarrance v. State of Florida, 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572; Martin v. State of Texas, 200 U.S. 316, 26 S.Ct. 338, 50 L.Ed. 497; cf. Brownfield v. State of South Carolina, 189 U.S. 426, 23 S.Ct. 513, 47 L.Ed. 882."

3. See United States v. Gordon, 7 Cir., 1958, 253 F.2d 177, 184; Gomez v. United States, 5 Cir., 1957, 245 F.2d 344, 346; Butler v. United States, 4 Cir., 1951, 191 F.2d 433, 435, where the court said: "This Court is not free to interfere unless a clear abuse of discretion is shown;" Yarborough v. United States, 4 Cir., 1956, 230 F.2d 56, 63; and Fredrick v. United States, 9 Cir., 1947, 163 F.2d 536, 550–551, certiorari denied 332 U.S. 775, 68 S.Ct. 87, 92 L. Ed. 360, from which this language is quoted:

"Furthermore, considerable discretion is lodged in the court as to questions that are to be asked on voir dire. In Connors v. United States, 158 U.S. 408, 413, 15 S.Ct. 951, 953, 39 L.Ed. 1033, the court used the following language: '* * * That inquiry is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion. This is the rule in civil cases, and the same rule must be applied in criminal cases.' * *

"We do not believe that the court below abused its discretion in refusing to ask the jury the question requested by the appellants.

"In an effort to spell out reversible error, the appellants have indulged in microscopic criticisms of the record below. Such tactics call to mind the language used in Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 470, 86 L.Ed. 680: 'Perhaps the court did not attain at all times that thoroughgoing impartiality which is the ideal, but our examination of the record as a whole leads to the conclusion that the substantial rights of the petitioners were not affected. The trial was long and the incidents relied on by petitioners few. We must guard against the magnification on appeal of instances which were of little importance in their setting. * * *'"

Appellant relies chiefly upon Bailey v. United States, 5 Cir., 1931, 53 F.2d 982, and Aldridge v. United States, 1931, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054. In Bailey, what we condemned was that the lower court did not exercise its discretion at all, feeling that its questions on *voir dire* were limited to those prescribed by Georgia law. Aldridge does not apply on its facts. A Negro was on trial for murdering a white man, a member of the police force of the District of Columbia. The court refused to inquire of the jurors whether they would be swayed by racial prejudice, although it was advised by counsel that, upon a previous trial, racial prejudice had entered into the deliberations of the jury.

Court of the United States in *Lutwak v. United States*, 344 U.S. 604, 619, 73 S. Ct. 481, 490, 97 L.Ed. 593, is applicable: "In view of the fact that this record fairly shrieks the guilt of the parties, we cannot conceive how this one admission could have possibly influenced this jury to reach an improper verdict."

Affirmed.