Jerroll **JOHNSON**, Appellant,

v.

Stanley **HILL**, Appellee.

No. 16079.

United States Court of Appeals
Eighth Circuit.

Jan. 20, 1960.

---

10. 4 Cir., 242 F.2d 359, affirmed as to the McNinch claim in 356 U.S. 595, 78 S. Ct. 950, 2 L.Ed.2d 1001.

11. 3 Cir., 268 F.2d 504.

Francis J. Magill (of Nilles, Oehlert & Nilles), Fargo, N. D., for appellant.

William E. Kalar (of Halloran & Kalar), Minneapolis, Minn., for appellee.

Before JOHNSEN, Chief Judge, and MATTHES and BLACKMUN, Circuit Judges.

MATTHES, Circuit Judge.

This case grew out of two collisions in which three automobiles were involved. Stanley Hill, the operator of one of the vehicles, sustained serious and permanent injuries, for which he received a jury verdict and judgment against defendants Jerroll Johnson and Lawrence Fernow, the drivers of the other two automobiles, in the sum of $38,250. Defendants unsuccessfully moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. Defendant Johnson alone has appealed. We have jurisdiction because of diversity and the amount involved.

The underlying question for determination is whether the evidence was sufficient to support the verdict and judgment against Johnson. He contends one, that as a matter of law, plaintiff failed to show any negligence on his part, and two, that the evidence shows that the sole proximate cause of the collision and plaintiff's injuries was the negligence of defendant Fernow.

As an appellate court, our duty is clear. We must not weigh the evidence or substitute our judgment for that of the jury as to reasonable inferences which follow therefrom. Plaintiff is entitled to have all disputed facts resolved in his favor, and we must likewise accord plaintiff the benefit of every fair and reasonable intendment that the evidence will justify. See Cram v. Eveloff, 8 Cir., 127 F.2d 486, 487.

In many respects this is a typical automobile collision case in which the battle line was drawn between the two defendants as contesting parties in so far as the question of liability is concerned. Neither defendant made any serious effort to establish that plaintiff was in any way responsible for the collision between his vehicle and the Johnson automobile, rather each tried to place the entire blame on the other.[1]

The applicable substantive law is that of North Dakota. No useful purpose can be served by a detailed recitation of the facts. As was so aptly stated by Judge Sanborn in speaking for the court in Berlo Vending Co. v. Massey, 8 Cir., 260 F.2d 832, 833, 834:

"An exhaustive opinion in these personal injury cases arising out of automobile accidents ordinarily adds nothing to either legal lore or legal literature. The parties and their counsel are familiar with the evidence, which can be of little interest to others. The burden of demonstrating error and prejudice is on the appellant, and in a diversity case governed by state law that burden is a heavy one. See Homolla v. Gluck, 8 Cir., 248 F.2d 731, 734."

The undisputed facts show that the collisions took place on State Highway

---

1. The court instructed the jury that plaintiff was not negligent in the operation of his automobile at the time of the accident. No exception was taken to this charge.

No. 32, a north and south highway, near Lisbon, North Dakota, shortly after 5 o'clock p. m. on July 21, 1956. The highway was surfaced or paved with tarvia, commonly called blacktop. The pavement was 22 feet wide with a 5-foot shoulder on each side of the paved surface. The highway was straight and level for a distance of approximately 1,200 feet south of the point of accident, then there was an incline or upgrade for a distance of approximately 1,350 feet to the crest of a hill, which was approximately 2,550 feet south of the accident scene. This overall segment of the highway was referred to as the "Five Mile Hill." The legal maximum speed on this highway was 65 miles per hour. Plaintiff was proceeding southwardly in the lane for southbound vehicles, at a speed of 60 miles per hour. There were 4 northbound vehicles. The most northerly one was an automobile which was pulling a small trailer. It was owned and occupied by Edward Sandstrom and was being driven by his son. The most southerly vehicle was being driven by Kenneth Alden Cavett. Between the Sandstrom and Cavett vehicles was the automobile being driven by defendant Johnson, which was followed by defendant Fernow. There were two collisions, one between the Johnson and Fernow vehicles, the other between Johnson's and plaintiff's vehicles. The collision in which plaintiff was involved occurred in his southbound lane of traffic. With the exception of evidence pertaining to physical facts, such as skid and gouge marks and position of vehicles following the collisions, concerning which there was likewise no dispute, we find considerable discrepancy as to other pertinent elements of the litigated incidents. In his brief, appellant has presented to us the evidence most favorable to him, but there is controverting and adverse evidence in the record from which the jury could find or legitimately infer that the collisions came about in this manner:

Johnson and Fernow, if not friends, were acquaintances. The day of the accident, they met in a Lisbon cafe after each separately had attended a local fair. Leaving the cafe together, each began his separate journey to Enderlin, North Dakota, to return to work. The jury had before it testimony by a disinterested witness to the effect that Fernow and Johnson, upon leaving Lisbon, were observed to be driving at a high rate of speed, side by side, up a hill, with Fernow's vehicle in the passing lane.

As the Cavett vehicle was proceeding down the Five Mile Hill at a speed of 45 miles per hour, it was passed by the Johnson and Fernow vehicles in that order, traveling at a speed of between 80 and 90 miles per hour with approximately 100 feet separating them. At that time the Sandstrom vehicle was approximately one-half mile north of Cavett. Johnson and Fernow continued at a high rate of speed until Johnson overtook the Sandstrom automobile and trailer which were traveling at only 27 miles per hour. Johnson pulled slightly to the left of the center line to determine whether he could pass the Sandstrom vehicle, then swerved back and for the first time applied his brakes suddenly and with force. The application of the brakes was the first signal given to Fernow that Johnson intended to slacken the speed of his vehicle. At this point Fernow was 75 to 100 feet behind Johnson, and both vehicles were moving at a speed of between 70 and 75 miles per hour. Because of the sudden slackening of the speed of Johnson's automobile, the left front of Fernow's automobile struck the rear of Johnson's automobile, which in turn swerved to the left, coming into violent collision with the left front and left side of plaintiff's vehicle.

The physical facts were established by the testimony of the highway patrolman who made the post-collision investigation and by photographs and a large plat drawn and prepared by an engineer. No useful purpose will be accomplished in detailing these facts. Suffice it to say, that the gouge and skid marks together with the demolished condition of plaintiff's and Johnson's vehicles were sufficient to warrant the inference that the

Johnson and Fernow vehicles were moving at a high rate of speed immediately before the collisions.

■ We first take up the question of Johnson's negligence. In North Dakota the driver of a motor vehicle is under a statutory duty not to stop or suddenly decrease the speed of his vehicle "without first giving an *appropriate* signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal." (Emphasis added.) § 39–1038, N.D.R.C.1943, 1957 Supplement. Section 39–1039 of the North Dakota statute provides that a stop signal shall be given either by means of the hand and arm or by a signal lamp or lamps or mechanical signal device. In construing nearly identical statutes of Utah and Minnesota, under facts analogous to the instant situation, it was held that a jury question was presented as to whether the driver of the lead vehicle had warned the driver of the vehicle following closely behind, by appropriate signal, of his intention to stop or suddenly decrease his speed. See United States v. First Sec. Bank of Utah, 10 Cir., 208 F.2d 424, 429, 42 A.L.R.2d 951; Benson v. Hoenig, 228 Minn. 412, 37 N.W.2d 422, 425. Compare also Ryan v. Griffin, 241 Minn. 91, 62 N.W.2d 504, 507.

It is to be noted that giving a signal is not in itself sufficient statutory compliance. It must be an *appropriate* signal. Here, Johnson admitted seeing plaintiff approaching when he was about 9/10 of a mile away; at the same time, Johnson saw the northbound Sandstrom vehicle ahead of him. The jury was justified in finding that Johnson continued at a speed of 70 to 75 miles per hour, when he knew, or by the exercise of ordinary care could have known, that Fernow was following closely behind and at the same rate of speed; that Johnson gave no signal until he depressed the brake pedal, and suddenly decreased the speed of his vehicle, this at a time when Fernow, who testified he did not see the vehicles of Sandstrom or plaintiff, was within 75 to 100 feet of Johnson, and

traveling at a high rate of speed. This evidence furnished adequate basis for a finding that the flashing of the brake light was not an appropriate signal under the circumstances.

Closely allied to the question of Johnson's negligence is the factor of proximate cause. Fernow's negligence is clear; it is apparent that he was traveling at an excessive speed; and that he was following Johnson's vehicle more closely than was reasonable and prudent, contrary to North Dakota law. It was stipulated that Fernow pleaded guilty to a criminal charge of aggravated reckless driving. In this connection, Johnson, posing as the innocent victim of circumstances, hurtled into plaintiff's vehicle through no fault of his own, strongly urges that Fernow's negligence was the sole proximate cause of plaintiff's injuries. This claim of immunity rests upon Johnson's somewhat improbable version of the accident to the effect that he had been following the Sandstrom vehicle for at least thirty seconds, at a low rate of speed, before he was suddenly "rear-ended" by Fernow. The jury was entitled to disregard this testimony, and find, as it manifestly did, that Johnson's negligence concurred with that of Fernow, and that the concurrent negligence of both defendants proximately caused the collision with plaintiff's vehicle.

The purport of appellant's second point is that the court erred in not directing the jury, pursuant to his motion, to return a verdict against defendant Fernow, the theory being that the evidence and other proceedings established Fernow's negligence as a matter of law. As we view the court's charge, the jury was effectively instructed that Fernow's conduct constituted negligence. On the question of liability the jury was informed that there were three questions to consider, viz.: (1) was the negligence of Fernow the sole proximate cause of the accident; (2) was Johnson negligent and, if so, was his negligence the sole proximate cause of the accident; (3) were both Fernow and Johnson negligent and did their concurring negligence prox-

imately cause the accident. We believe the court's charge was proper. In any event, appellant has failed to demonstrate wherein he was prejudiced by failure of the court to explicitly direct a verdict against Fernow. The jury did precisely what Johnson unsuccessfully importuned the court to do.

■ Appellant also urges that certain of the trial court's rulings on evidence and instructions constitute reversible error of law, requiring a remand for new trial. We have carefully examined and considered these assignments, and are convinced that the rulings complained of did not affect the substantial rights of appellant. To illustrate, by point V, appellant assails the court's action in excluding evidence as to highway patrolman Farsdale's state of mind with respect to criminal prosecution of Johnson, when evidence with respect to his state of mind concerning Fernow was admitted. Apart from the fact that Johnson's freedom from criminal charges would appear to be irrelevant to any question of his civil responsibility for negligence, the short answer to this contention is that no effort was made in the trial to demonstrate the purport of the patrolman's testimony, inasmuch as no offer of proof was made as required by Rule 43 (c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. See and compare Thompson v. Lillehei, 8 Cir., 273 F.2d 376; Hawkins v. Missouri Pac. R. Co., 8 Cir., 188 F.2d 348, 350; Cavanaugh v. Fireman's Fund Ins. Co., 8 Cir., 197 F.2d 853, 855. In this situation we are not warranted in holding that the court's action in sustaining objection to the question constituted error which affected the substantial rights of appellant.

■ By point VI appellant seeks to predicate error upon the action of the court in excluding as evidence paragraph V of plaintiff's complaint. During the trial plaintiff testified that he could not recall if the Johnson vehicle was struck before it collided with plaintiff's automobile. In paragraph V of the complaint plaintiff alleged that the defendants negligently operated their vehicles so as to cause them to collide with each other and to cause Johnson's vehicle to collide with the automobile operated by plaintiff. It is appellant's position that in view of plaintiff's testimony at trial, he should have been permitted to introduce the petition as an admission and for impeachment purposes.

Regardless of the admissibility of the portion of the petition under consideration on the theory of impeachment,[2] or as an admission,[3] other pertinent evidence and the ultimate outcome of the case belie the assertion that prejudicial error resulted from its exclusion. While there was some testimony that Johnson's vehicle collided with plaintiff before being struck by the Fernow automobile, there was substantial evidence, which the jury evidently believed, that the Johnson vehicle was first struck in the rear by Fernow's automobile, and then projected into collision with plaintiff. Realistically, it appears that Fernow's liability was contingent upon such a finding. The verdict whereby both defendants were held resolved this issue. Moreover, although the court rejected the offer of proof, any possible error in so doing was cured by the court's charging the jury that plaintiff claimed that the defendants negligently caused their automobiles to collide with each other, and Johnson's vehicle to collide with plaintiff. The court's language was in all material respects identical to that found in plaintiff's petition.

■ Point XIV is focused upon the alleged misconduct of one of the jurors.

2. See Stolte v. Larkin, 8 Cir., 110 F.2d 226, 232, where the Court stated: "That statements in pleadings in the nature of admissions against interest are admissible is established not only in federal courts (citing cases), but generally (citing authority)."
See also 31 C.J.S. Evidence §§ 301, 302.

3. See Wigmore on Evidence, Vol. 4, 3d Ed., § 1067.

On voir dire examination juror Harry Strege was interrogated as follows:

"Q. Now, have you ever been involved in an accident of any kind?

A. No, I haven't.

"Q. How about the members of your family? A. No."

One of the grounds relied upon by Johnson in his motion for new trial was that juror Harry Strege's son, Lynn, had been involved in an automobile collision on November 9, 1955; that thereafter a property damage suit, seeking recovery of $500, was commenced in his behalf in which Harry Strege acted as guardian ad litem; that the action was tried and the issues found against young Strege. Prejudice is claimed because juror Strege failed to inform the court, upon being interrogated as above set out, of the accident involving his son. The point must be and is ruled against appellant. It is manifest from the record that at the time of voir dire examination appellant's counsel had information from two sources that an individual by the name of "Harry" or "Harris" Strege had been involved in a property damage suit in Richland County. Appellant's counsel admitted this at the hearing on motion for new trial. The record discloses that the trial judge, after conducting the voir dire examination of the members of the jury panel, asked respective counsel if additional inquiry of the prospective jurors was desired. Although appellant's counsel was possessed of information which was sufficient to put him on notice as to the prior Strege incident, he remained mute and made no request of the court for a further interrogation. Additionally, the trial extended from February 4 to February 11, 1958, which certainly afforded counsel ample time and opportunity to apprise the court of his knowledge with respect to juror Strege. Counsel took no action until there was an adverse verdict. Under these circumstances, appellant cannot with fairness complain of the action of the court in refusing to set aside the verdict and judgment. In Batsell v. United States, 8 Cir., 217 F.2d 257, 260, this court had occasion to consider a question analogous in principle. There we said:

"The right to challenge the panel or to challenge a particular juror may be waived, and in fact is waived by failure to seasonably object. Carruthers v. Reed, 8 Cir., 1939, 102 F.2d 933, 939. It is established that failure to object at the time the jury is empaneled operates as a conclusive waiver if the basis of the objection is known or might have been known or discovered through the exercise of reasonable diligence, or if the party is otherwise chargeable with knowledge of the ground of the objection. 50 C.J.S. Juries § 251."

See also and compare, Gomez v. United States, 5 Cir., 245 F.2d 344, 346, certiorari denied 355 U.S. 863, 78 S.Ct. 95, 2 L.Ed.2d 68; Spells v. United States, 5 Cir., 263 F.2d 609, certiorari denied 360 U.S. 920, 79 S.Ct. 1439, 3 L.Ed.2d 1535; King v. Leach, 5 Cir., 131 F.2d 8 (alleged infirmities of juror not called to court's attention).

■ For an equally cogent reason the contention is without substance. We have nothing before us to establish that the conduct complained of was of such magnitude, standing alone, as to affect the substantial rights of appellant. There is no showing of intentional deception on the part of the juror; the involvement of the juror's son in prior litigation having its origin in an automobile collision does not, in and of itself, furnish adequate legal basis for us, as a reviewing court, to interfere with the considered action of the court in permitting the judgment to stand. The trial judge, in the first instance, has the responsibility and duty to so supervise and conduct litigation proceedings as to afford all parties a fair and impartial trial to the end that justice is served. The record satisfies us that the trial judge followed this mandate. He made an in-

vestigation of the alleged misconduct of juror Strege and reached the conclusion that the verdict was not improperly influenced. Our rule is that "(a) motion for a new trial is always directed to the sound discretion of the trial court. It is only for a clear abuse of that discretion that an appellate court will reverse." Stofer v. Montgomery Ward & Co., 8 Cir., 249 F.2d 285, 288. As we have seen, the verdict finds ample support in the evidence that was presented to the jury, and we find no abuse of discretion in the denial of a new trial.

■■■ Other points relate to the admission of certain evidence, the failure of the court to permit certain exhibits to go to the jury room;[4] the failure to grant a new trial because of alleged prejudicial argument of plaintiff's counsel;[5] the failure to grant a new trial because of claimed excessiveness of the verdict,[6] and the failure of the court to properly declare the law in its instructions to the jury. Each reviewable assignment has received our careful consideration, and we fail to perceive that the action of the court complained of resulted from abuse of discretion or resulted in prejudicial error. Rule 61 of the Federal Rules of Civil Procedure provides that error in either the admission or exclusion of evidence, or error in any ruling or in anything done or omitted by the court, shall not be grounds for setting aside a verdict or for vacating or otherwise disturbing a judgment, "unless refusal to take such action appears to the court inconsistent with substantial justice."

There being no error, the judgment of the lower court is

Affirmed.

---

4. Taped statements of participants previously played to jury, and transcripts of those tapes.

5. Plaintiff's attorney, referring to defendants' counsel, stated: "They defend cases all over this state." Defendants claimed this injected insurance into the case and was grounds for mistrial.

6. The question of the alleged excessiveness of a verdict, raised by motion for new trial, is addressed to the sound discretion of the trial court and is not reviewable upon appeal. See American Surety Co. v. Schottenbauer, 8 Cir., 257 F.2d 6, 13–14.