170 So.2d 88 (1964)
Della Woods HAISLET, Appellant,
v.
Mary Inez Hare CROWLEY, Appellee.
No. 4418.
District Court of Appeal of Florida. Second District.
December 30, 1964.
*89 James O. Driscoll, of Berson, Barnes & Inman, Orlando, for appellant.
W.N. Avera, Gainesville, and William Whitaker, Winter Park, for appellee.
SMITH, Chief Judge.
This appeal involves a collision between three vehicles which had been traveling in the same direction. The defendant-appellant, driver of the leading vehicle, stopped in a lane of traffic governed by a continuous green traffic light, allegedly without giving adequate notice or warning. The plaintiff-appellee, driver of the second vehicle, saw the defendant's brake lights come *90 on and stopped short of her vehicle; however, she was struck from the rear by a third vehicle and shoved forward into the appellant's vehicle. Neither the owner nor the driver of the third vehicle was a party at the trial of the action which resulted in a verdict for the plaintiff-appellee upon which the trial court entered judgment. We reject the defendant-appellant's contentions that the court erred in refusing to direct a verdict in her favor on the issues of negligence, contributory negligence and proximate cause but reverse for a new trial because of several errors involving the admission of evidence and jury instructions.
The defendant, the plaintiff and the driver of the third vehicle were proceeding in that order east on Colonial Drive, a four-lane highway in Orlando, on a clear, dry day. They were traveling at a speed of approximately thirty miles per hour in the south lane for eastbound traffic. As they approached a T-type intersection formed by the entrance into Colonial Drive of Bennett Road from the north, traffic signs on the right advised motorists "Thru Traffic-Keep Right." Above the center of the intersection was a red-caution-green traffic light which controlled traffic in the north lane for eastbound vehicles. Traffic in the south eastbound lane was controlled by a single green traffic light with an arrow permitting motorists in that lane to proceed eastward continuously. Traffic was heavy but there were no cars immediately in front of the defendant.
The plaintiff testified that as they approached the intersection she saw the defendant's brake lights come on, immediately slammed on her brakes, and came to a squealing halt about one foot from the rear of the defendant's car; almost instantaneously, she heard the squealing of brakes on the car to her rear and was hit by the third car which drove her car into the defendant's car. Plaintiff estimated that the defendant was about 40 feet from the intersection when her brake lights came on and that the defendant stopped at the edge of the intersection. Plaintiff further testified that prior to the stop at the intersection the three vehicles had been traveling for approximately a mile at a speed of about thirty miles per hour separated by a distance of about two or three car lengths. Some variation in the speed of the cars and the distance between them was developed during the plaintiff's cross-examination.
The defendant testified that as she approached the intersection she did not see the through traffic signs on her right or the continuous green traffic light over the lane in which she was traveling; that when she was approximately a block from the intersection she saw the traffic light in the center of the intersection turn red and that she began to slow down and stopped at the intersection in a manner which she described as a slow stop, a normal stop. When asked how long she had been stopped when her car was struck, the defendant testified: "It happened shortly after I come to a complete stop, probably 50 seconds. It happened so quickly." A passenger riding with the defendant in general substantiated the defendant's testimony.
Apparently, neither party looked for skid marks and the traffic officer who investigated the accident could not recall whether there were any skid marks on the road. The jury by its verdict resolved conflicts in the evidence in favor of the plaintiff and against the defendant. Therefore, all reasonable inferences from the evidence are to be taken in favor of the plaintiff.
There was received in evidence an ordinance of the City of Orlando which, among other things, provided:
Sec. 39.90(3): "No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided in this chapter to the driver of any vehicle immediately to the rear when there is opportunity to give such signal."

*91 Sec. 39.91 "The signals required in this article shall be given either by means of the hand and arm or by a signal lamp or signal device. * * *"
The foregoing quoted portions of the ordinance are identical in all relevant respects to the provisions of §§ 317.371(3) and 317.381(1), Fla. Stat., F.S.A. The parties agree that when the defendant applied her brakes her brake lights became lighted. This is one of the methods of giving the signal required by the ordinance and the statute. The ordinance and statutes permit a hand signal in the alternative but do not require a hand signal. No Florida decisions have been cited interpreting the ordinance or the statutes. However, it appears that in construing similar statutes or ordinances most courts in other states have adopted the view that the signal, whether given by hand or signal device, must be "appropriate," that the momentary flashing of a brake light given simultaneously with a sudden decrease in speed may be ineffective under certain circumstances and that, ordinarily, whether or not a signal was "appropriate" is a question of fact for the jury.[1] We adopt this view and do not find it to be inconsistent with the view that when a driver stops or decreases his speed he is required to give no signal other than that given by his brake lights. The question is not, as we see it, whether the signal was by brake light or by hand but rather whether the brake light signal, permitted by the ordinance and statute and admittedly given when the brakes were applied, was an "appropriate signal" in the sense of being sufficient notice in point of time.
We reject the defendant's contention that the evidence shows without contradiction that she performed the duty required by the ordinance. The fact that her brake lights came on the moment she applied her brakes and that this enabled the plaintiff to stop without striking the defendant does not necessarily establish her freedom from negligence. We have examined the authorities relied upon by the defendant.[2] While a detailed analysis will reveal some distinguishing aspects, we accept these decisions as authority for the proposition that, as a matter of law, a leading driver is not negligent in stopping where one or more following vehicles are able to stop behind the leader without colliding with the vehicle ahead. We are of the view that this rule cannot withstand the application of logic and reason because it narrows itself down to the principle that feet or inches determine negligence as a matter of law without consideration of all other relevant factors. We prefer and follow the rule that the fact that one or more following vehicles stopped or could have stopped without colliding with the vehicle ahead does not as a matter of law absolve the leading driver of negligence.[3] We think the better rule as signified by the latter cases is that the appropriateness of a signal (used in the instant case in the sense of being adequate and sufficient in point *92 of time) is ordinarily, and was here, a question of fact for the jury, to be resolved by a consideration of all of the relevant facts and circumstances.
The defendant asserts that the court erred in giving the following instruction to the jury over her objection:
"The law does not allow a motorist to make a sudden stop on a street or highway without first ascertaining that such a stop can be made with reasonable safety to other users of the highway. The fact that a motorist does make a sudden stop without first ascertaining whether he can do so without endangering the safety of other users of the highway may form the basis of finding of negligence on the part of such driver."
The plaintiff contends that this instruction is nothing more than a statement of the law as set forth in the ordinance of the city heretofore quoted and in §§ 317.371(3) and 317.381(1), Fla. Stat., F.S.A., and that it is a correct statement of the case law as set forth in Miami Transit Co. v. Karses, 1941, 146 Fla. 163, 200 So. 372. We have examined the authorities cited by the plaintiff both to the trial court and this court.[4] We conclude that the subject instruction, as given, is not supported by any authority, that it is not a proper statement of the law and that it was error for the court to give the charge. This charge placed a greater duty on the driver of the leading vehicle than the law imposes. The use of the word "ascertaining" would convey to the jury the impression that it was the duty of the defendant, leading motorist, to make certain or to assure or to be free from doubt, as the word "ascertain" is defined in Webster's New International Dictionary, Second Edition, 1957. The effect of this charge was to state to the jury that a motorist making a sudden stop must be certain that such a stop can be made without endangering the safety of others. Certainty implies a guarantor or insuror relationship and it imposed a duty in excess of that imposed by law. The duty which the defendant, the leading motorist, owed to the plaintiff, the following motorist, was prior to stopping or suddenly decreasing her speed to give an appropriate signal in accordance with the ordinance and statutes hereinbefore quoted. See also Cardell v. Tennessee Electric Power Co., 5 Cir.1935, 79 F.2d 934.
The defendant next contends that even if she was negligent it was not the proximate cause of the plaintiff's injury. Sheehan v. Allred, Fla.App. 1962, 146 So.2d 760, cited by the defendant on the issue of proximate cause, involves a fact situation substantially different from that before us. The other cases cited by the defendant are factually similar and contain language which tends to support the defendant's contentions with respect to proximate cause.[5] However, to the extent that these cases do support the defendant on this issue they are inconsistent with what appears to us to be the majority and better view, which we adopt. In addition to the cases cited in footnote 3, supra, the following cases support the conclusion that, if the defendant was negligent, her negligence properly could have been found to constitute a proximate cause of the collision. Hill v. Wilson, 1949, 216 Ark. 179, 224 S.W.2d 797; Rivkin v. Gouveia, 1943, 130 Conn. 378, 34 A.2d 634; Gleason v. Cunningham, 1942, 316 Ill. App. 286, 44 N.E.2d 940; and Corrigan v. Reiber, 1932, 235 App.Div. 557, 257 N.Y.S. 569. In each of these latter cases leading drivers were held liable for collisions between following vehicles even though the second driver had stopped short of the first before being struck from the rear by a third vehicle.
*93 We cannot concur in the defendant's contention that the plaintiff's own testimony establishes as a matter of law that she was guilty of contributory negligence. In making this contention the defendant first asserts and accepts as a fact that part of the plaintiff's testimony dealing with the distance between her automobile and that of the defendant and then computes on a mathematical basis speed, reaction time and stopping time to arrive at the conclusion that the plaintiff could not have stopped within the intervening distance. By this process defendant then concludes that the defendant's stop was not sudden, as testified to by the plaintiff, but necessarily was slow and gradual, as testified to by the defendant, because the plaintiff did stop prior to striking the defendant. Such an argument projects itself into the realm reserved to the jury. It requires the acceptance of a part of the plaintiff's testimony and the rejection of another part which is within the exclusive province of the jury. See Wynne v. Adside, Fla.App. 1964, 163 So.2d 760.
The defendant further asserts error by the court admitting into evidence certain ordinances of the City of Orlando and charging the jury with respect to them. The court received in evidence and charged the jury on Section 39.90(3), supra, which deals with giving an appropriate signal before stopping or suddenly decreasing speed, on Section 39.91, supra, which provides that the signal should be given either by means of the hand and arm or by a signal lamp or signal device, and on Section 39.92 of the city ordinances, which provides as follows:
"All signals required by this article to be given by hand and arm shall be given from the left side of the vehicle, except on righthand drive vehicles, in which case signals may be given on the right side, in the following manner and such signals shall indicate as follows: 3. Stop or decrease of speed. Hand and arm extended downward."
The quoted section of the ordinance received in evidence and included in the court's instructions to the jury was outside the issues made by the evidence since all of the testimony showed that the signal was given by brake lights and that none was given by hand and arm. The question to be determined by the jury was the timeliness of the signal given, not whether or not an arm signal was properly given. Therefore, the charge was an abstract statement of law correct within itself but not within the issues submitted to the jury for their determination and should not have been given. If it were standing alone this error would be harmless.
The court also received in evidence and included in its instructions to the jury an ordinance of the City of Orlando which provides as follows:
"Official signs may be erected directing slow-moving traffic to use a designated lane or allocating specified lanes to traffic moving in the same direction and drivers of vehicles shall obey the directions of every such sign."
All of the evidence received in the cause was uniform and consistent to the effect that all three cars during all of the times testified to occupied the same lane of traffic and moved at approximately the same speed until the defendant stopped. The ordinance was a correct statement of an abstract principle of law but not within the issues submitted to the jury and it should not have been given. If it were standing alone this error would be harmless.
The defendant further asserts that the court erroneously admitted into evidence and included in its instructions to the jury a portion of the ordinances of the City of Orlando dealing with stopping, standing or parking a vehicle. The court previously had received in evidence and instructed the jury with reference to that part of the ordinances of the City of Orlando requiring the driver of any vehicle to obey the instructions of any official traffic *94 control device. This covered the issue presented by the fact that the defendant admittedly stopped in a lane of traffic where an official traffic control device displayed a green arrow permitting traffic to flow continuously. The charge of which the defendant now complains was to the effect that no person shall stop, stand or park a vehicle at any place where an official sign prohibits stopping. There was no evidence of any such sign. The charge was outside the issues submitted to the jury and was an abstract statement of a principle of law not applicable to the facts. If it were standing alone this error would be harmless.
The defendant complains because the court refused to admit into evidence certain portions of the ordinances of the City of Orlando pertaining to speed restrictions and following too closely. One of the theories of the defendant's defense was that the plaintiff's own testimony shows she was contributorily negligent in following the vehicle of the defendant too closely in view of the speed and the distance between them and that this required a sudden stop on the part of the plaintiff. This contention was based on defendant's testimony that she made a slow, normal stop and variations in the plaintiff's testimony concerning speed and distance. The court should have admitted the relevant portions of these ordinances. They were within the issues framed and submitted to the jury. Litigants have the right to have the court instruct the jury as to the law applicable to the evidence under the issues presented. Hattaway v. Florida Power & Light Co., Fla.App. 1961, 133 So.2d 101.
We deem it unnecessary to detail the defendant's remaining points on appeal. In the interest of promoting the administration of justice we make special note of the record of the charge conference in this case. At the beginning of the conference the court submitted to counsel for the parties its proposed instructions to the jury which covered almost all of the law on the issues to be submitted to the jury. The plaintiff submitted 24 separately numbered requested instructions and the defendant 34 separately numbered requested instructions. A great number of these requested instructions were either contained in substance in the proposed charge of the court or were entirely outside the law applicable to the issues raised by the evidence. We take this opportunity to point out to the Bar a fact well known but which we feel needs to be restated and re-emphasized; that is, that counsel should present requested instructions only on the law applicable to the issues actually presented by the evidence that are not included in the charge which the court proposes to give. A violation of this principle places an unnecessarily heavy burden on the trial court.
The judgment is reversed with directions to grant the defendant a new trial.
WHITE, J., and WILLSON, J.H., Associate Judge, concur.
NOTES
[1] E.g., Box v. Swindle, 5 Cir.1962, 306 F.2d 882 (applying Mississippi law); Kuether v. Locke, 1961, 261 Minn. 41, 110 N.W.2d 539; Johnson v. Hill, 8 Cir.1960, 274 F.2d 110 (applying North Dakota law); United States v. First Security Bank of Utah, 10 Cir.1953, 208 F.2d 424, 42 A.L.R.2d 951 (applying Utah law). Contra: Tesch v. Wisconsin Public Service Corporation, 1957, 2 Wis.2d 131, 85 N.W.2d 762 (leading driver has no duty to give signal by light application of brakes before suddenly decreasing speed).
[2] Ellis v. McCubbins, 1950, 312 Ky. 837, 229 S.W.2d 992. See also Todd v. Ferrell, 1957, 212 Md. 574, 130 A.2d 581; Gandy v. Arrant, La. App. 1951, 50 So.2d 676; and Branstetter v. Gerdeman, 1955, 364 Mo. 1230, 274 S.W.2d 240.
[3] Chadwick v. Popadick, 1957, 390 Pa. 511, 136 A.2d 87; Howe v. Neal, 1958, 145 Conn. 187, 140 A.2d 318; Benson v. Hoenig, 1949, 228 Minn. 412, 37 N.W.2d 422; Ebersole v. Lowengrub, Del. 1962, 180 A.2d 467. For other cases involving liability for collisions resulting from sudden stops, see Annot., 29 A.L.R.2d 5 (1953).
[4] When the plaintiff requested the court to give this instruction plaintiff cited 3 Fla.Jur., Automobiles § 131, as authority for the charge.
[5] Turner v. McGee, 1961, 68 N.M. 191, 360 P.2d 383 and Branstetter v. Gerdeman, 1955, 364 Mo. 1230, 274 S.W.2d 240.