JOHN C. MASSIE *vs.* CHARLES K. BARKER.
MABEL A. MASSIE *vs.* SAME.

Middlesex.     March 27, 1916. — June 20, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Negligence,* In use of highway.     *Automobile.*

</div>

In an action against the proprietor of a motor truck for personal injuries sustained from the wagon in which the plaintiffs were driving on a highway having been run into from behind by the motor truck driven by a servant of the defendant in the winter time when the ground was frozen, neither of the plaintiffs saw the

---

* *Sanderson,* J. The jury returned a verdict for the plaintiff in the sum of $750; and the defendant alleged exceptions.

collision and the driver of the motor truck testified that, after the plaintiffs'
wagon had been turned to the right in response to a warning horn sounded by
him and as he was about to pass the wagon on the left, a large sheep dog jumped
in front of the car and that, yielding to an "impulse of the moment not to hit
the dog," and not appreciating that he was endangering the plaintiffs, "I just
yanked the car a fraction to prevent hitting the dog, and as I righted the car up
again the next moment I skidded, and the top of my rear mud guard hit the
left front wheel of the wagon." *Held,* that it could not have been ruled as matter
of law that the defendant's driver was in the exercise of due care, and that the
questions, whether the surprise occasioned by the sally of the dog was such as
reasonably to cause the driver to be governed for the instant by impulse rather
than by sound judgment, or whether the exercise of due care required him to ob-
serve with greater accuracy the direction of his car, were for the jury, who were
at liberty to believe a part and discredit the rest of the driver's testimony.

Two ACTIONS OF TORT, the first for personal injuries to the plain-
tiff and damage to the plaintiff's horse and wagon, with a second
count for consequential damages by reason of injuries to the plain-
tiff's wife, all sustained on January 22, 1913, when the plain-
tiff's wagon, in which he was driving with his wife on Main Street
in the town of Wayland, was run into from behind by a motor
truck operated negligently by a servant of the defendant, and the
second action by the wife of the plaintiff in the first action for
personal injuries sustained in the same collision. Writs dated
January 23, 1913.

In the Superior Court the cases were tried together before
*Dana,* J. At the close of the evidence, the substance of which is
described in the opinion, the defendant asked the judge to rule in
each case that on all the evidence the plaintiff was not entitled to
recover. The judge refused to make this ruling and submitted the
cases to the jury. The jury returned a verdict for the plaintiff
in each case, in the first case in the sum of $1,492, which afterwards
was reduced to $750, and in the second case in the sum of $2,500.
The defendant alleged exceptions.

*S. H. Batchelder,* for the defendant, submitted a brief.

*M. T. Hall,* for the plaintiffs.

RUGG, C. J. No question is raised as to the due care of the
plaintiffs. The only controverted point is whether the defend-
ant's servant, who was acting within the scope of his authority,
might have been found on the evidence to have been negligent in
operating a motor truck.

The plaintiffs were driving in a wagon and, having turned to

the right in response to a warning horn, were injured by a collision with the motor truck coming from behind. Neither of the plaintiffs saw the impact. The defence, that there is nothing to warrant a finding of negligence on the part of the driver of the truck, rests upon this evidence introduced by the defendant through the driver of the truck: "I first observed the wagon when I was a couple of hundred feet back of the team going down hill. I was travelling between eight and twelve miles an hour. As I approached the wagon I was to the left of the centre of the road, and the wagon was to the right of the centre of the road. As I got practically opposite the wagon, just as I was passing, a large sheep dog . . . jumped in front of the car. On the impulse of the moment I just yanked the car a fraction to prevent hitting the dog, and as I righted the car up again the next moment I skidded, and the top of my rear mud guard hit the left front wheel of the wagon. . . . I felt a jar when the car struck the wagon, and immediately applied the brake. . . . I had gone by that house before, and I had seen dogs there before . . . I made up my mind that I would pass them [the Massies] with about two or three feet between me and the team. . . . The dog that ran out is a large sheep dog. My best estimate is that he might have stood twenty-four inches from the ground. . . . I saw the dog when he came out of the drive. I heard the dog bark when he jumped out of the drive. I was paying particular attention at that time to passing the Massies. . . . A very small fraction of a minute elapsed from the time I first saw the dog and the time I turned my machine. For the fraction of a minute I did not think of the Massies. I only knew it was the impulse of the moment not to hit the dog. I did not realize when I started to turn the machine that I was endangering the Massies. I said that when I was coming down my attention was given to how I would pass the Massies. I did strike them. I supposed I was careful. I could not tell you how near I came to striking the dog,—the dog flashed by. He was coming in front of the machine, as I remember, and I think he went right across my path. I started to turn my machine just as he jumped in front. I did not lose my head that I know of. I was merely taken by surprise." Several other witnesses testified whose evidence corroborated that of the driver to a greater or less extent. The accident happened on January 22. There was evidence that the road was

bare, frozen hard, "some rough, frozen into ruts as it generally would be at that season of the year."

The law as to drivers of motor vehicles is not different from that which governs other persons. The standard required is that of the reasonably prudent person under all the circumstances. If some unforeseen emergency occurs, which naturally would overpower the judgment of the ordinary careful driver of a motor vehicle, so that momentarily or for a time he is not capable of intelligent action and as a result injury is inflicted upon a third person, the driver is not negligent. The law does not require supernatural poise or self control. But no one safely can drive motor vehicles amid the distractions and dangers likely to be encountered on the modern highway and street who is not reasonably steady of nerve, quick in forming an opinion and calm in executing a design. Whether the conduct of the defendant's agent measured up to the standard of common caution for the driver of a motor vehicle under all the circumstances, was a question of fact.

The jury might have believed a part and discredited the rest of the testimony of the witnesses called by the defendant. It well might have been found that the truck did not skid in view of the condition of the road, the season of the year and the manner and place in which the truck struck the wagon, and that the injury was the result of the direction and speed given to the truck by the driver. Manifestly one exercising due care cannot hesitate in preferring the safety of human beings to that of dogs. It could not have been ruled as matter of law that the defendant's driver was in the exercise of due care. The jury might have found that due care required him to observe with greater accuracy the direction of his car, to determine not to deflect so much toward the right to avoid the dog, and to hold his faculties under such control as not to be disconcerted by the appearance of the dog. Whether the surprise occasioned by the sally of the dog from the yard into the highway was such as reasonably to cause the driver of the truck to be governed for the instant by impulse rather than by sound judgment, whether it was a discomposing exigency or a usual peril of the road, was a matter for the jury.

The charge of the judge was a fair amplification of correct principles of law and was not open to exception.

*Exceptions overruled.*