## HERMAN WEDEL v. JOHN E. JOHNSON AND OTHERS.[1]

January 17, 1936.

Nos. 30,494, 30,495, 30,496.

[1]Reported in 264 N. W. 689.

*McCune & McCune,* for appellants John E. Johnson, August Baarts, and George Foster, Jr.

*Frank E. Dougherty* and *John W. Flynn,* for appellant Ed Arnette.

*Leo J. Seifert* and *Putnam & Carlson,* for Herman Wedel, respondent.

LORING, JUSTICE.

Shortly after nine o'clock p. m. on June 12, 1934, plaintiff, while driving his automobile in a southerly direction on trunk highway No. 15, at a point about a mile and a half north of the city limits of Fairmont, collided with the body of a horse which had been struck and killed by the defendant Foster, who was driving a truck which he had borrowed from the defendants Johnson and Baarts.

The horse was left lying on the southbound or west lane of the pavement, where it was struck by plaintiff's car.

This suit was brought against Johnson and Baarts, the owners of the truck, George Foster, its driver, and Ed Arnette, the owner of the horse which had escaped and got onto the highway at the point of collision. On the trial plaintiff had a verdict against all of the defendants. They separately moved for judgment notwithstanding the verdict or a new trial, and from orders denying their motions they have appealed to this court. Plaintiff moved for a new trial on the ground of inadequate damages, and a new trial was granted him on that issue alone.

The principal questions presented are (1) whether Arnette was negligent in allowing his horse to get at large, and, if so, (2) was such negligence a proximate cause of the plaintiff's injuries? (3) was Foster negligent in colliding with the horse or leaving its carcass upon the pavement, and, if so, (4) were Johnson and Baarts responsible for Foster's acts? (5) was plaintiff guilty of contributory negligence?

The village of Truman is approximately 15 miles north of the city of Fairmont on highway No. 15, which is paved 20 feet wide. Foster resided in that village and, though not in the employ of Johnson and Baarts, borrowed from them a 1930 model A Ford delivery truck for the purpose of driving two girl friends to Fairmont the evening of the accident. When he arrived at a point about a mile and a half north of the Fairmont city limits, Arnette's horse came suddenly up out of the right-hand ditch and onto the pavement in front of him at a point about 30 feet ahead of his car. Foster promptly swerved to the left in an endeavor to avoid collision with the horse but was unable to do so. The collision killed the horse and wrecked the steering gear of the truck so that it swerved back and forth on the pavement and was stopped about 300 feet beyond the horse. The truck was seriously damaged in other respects, and Foster's head was so badly cut that if he had not been promptly taken to the hospital at Fairmont he would have bled to death. Ray Cordes came driving from the north almost immediately behind Foster. His lights revealed the horse a couple of

hundred feet before he came to it, and he drove around it, picked up the defendant Foster and his passengers, and took them to the hospital at Fairmont. Cordes immediately told of the accident to a man who notified the sheriff of the presence of the body of the horse upon the pavement, but before the carcass was removed plaintiff came along, driving from the north, and saw the reflection of his lights upon the truck but did not see the body of the horse until he was within 25 or 30 feet of it. A collision resulted in which plaintiff was severely injured. He seeks to hold Johnson and Baarts under our statute, L. 1933, c. 351, § 4, 3 Mason Minn. St. 1934, Supp. § 2720-104, which makes the person who operates a motor vehicle with the consent of the owner, express or implied, the agent of the owner in case of accident. He seeks to hold Foster for negligence in colliding with the horse and in leaving the body on the traveled portion of the highway, and he charges Arnette with liability on the theory that the horse was at large in violation of our statute, 2 Mason Minn. St. 1927, § 7295, which makes it unlawful for the person in control of any such animal to permit the same to run at large in this state, and he asserts that the evidence shows that Arnette was negligent in permitting the horse to escape from the fair grounds at Fairmont where it was being pastured.

Without going into the evidence in detail, a course which would unjustifiably extend this opinion, a careful examination of the record discloses that the jury might well find that Arnette's employes in charge of the horses at the fair grounds carelessly allowed them to escape and neglected promptly to return them to control, and we think that under modern traffic conditions the jury might also well find that a man of ordinary prudence would anticipate injury to someone from allowing horses at large in the vicinity of highways. This would be particularly true at night. It does not greatly alter the situation that the horse was struck on the highway by some other car. Such collision would not be an efficient intervening cause which would relieve Arnette of liability. The body of the horse, alive or dead, was a menace to the highway traffic, and allowing the animal to run at large was a substantial factor and a material contribution to plaintiff's injuries.

■ The serious question for the plaintiff is whether the evidence sustains a finding of negligence on the part of Foster, either in colliding with the animal or in leaving its body upon the highway. Foster's two passengers, in corroboration of his testimony, estimated his speed at approximately 30 miles per hour, which under the perfect weather conditions then existing was certainly a very moderate and normally safe rate of speed. It was dark. The first he saw of the horse was when it projected itself onto the pavement 25 or 30 feet ahead of him, when obviously it was too late to avoid a collision by putting on the brakes. Foster chose to veer his car to the left in an endeavor to miss the horse, and we think as a matter of law that a reasonably prudent driver would have chosen to do that rather than to attempt to stop by putting on the brakes. He had but a fraction of a second for reflection. By the negligence of Arnette he was confronted with an emergency, and even if he did not choose the safest way out of it, it seems to us that he nevertheless acted as a reasonably prudent man would have acted with the time he had in which to form a judgment. He was not bound to anticipate that animals would be at large in violation of a statute or in contravention of the requirements of ordinary prudence. Nor was he bound to have headlights that would reveal animals so at large beyond the traveled highway. Headlights upon an automobile are to reveal objects upon the highway and to announce the car's presence to others. There are sufficient dangers to be guarded against upon the traveled highway to absorb the driver's attention, and it would be hazardous to require him to survey the surrounding country as well. We think that as a matter of law he cannot be charged with negligence on that phase of the case. .

■ After Foster struck the horse his truck was unmanageable due to the injury to the steering gear. It swerved from side to side, and he coasted to a stop some 200 or 300 feet beyond the point of collision. Foster was then suffering from severe cuts which needed immediate attention if his life was to be saved. Four arteries had been severed, and blood was spurting from them. The testimony of plaintiff's doctor, who also attended Foster, is undisputed that 15 or 20 minutes more without medical attention would have re-

sulted in the loss of Foster's life. Foster was unaware of the position of the horse upon the highway or that he had killed it, and he was immediately taken to the hospital at Fairmont, where Cordes had the sheriff advised of the presence of the body of the horse upon the highway. The important thing was to get Foster to a physician or surgeon. Again, it seems to us that Foster was confronted with an emergency which excused him from ascertaining the presence of the horse's body on the highway and which required the services of Cordes to take him immediately to the hospital. He had no means of removing the body of the horse from the pavement even if he had known that it was there. To have lost time in an effort to clear the road might well have cost him his life. It was unfortunate that he was not in a position to arrange for a warning to traffic, but it is obvious that his paramount need for medical attention was sufficient to excuse him from arranging for such warning. We are of the opinion that reasonable minds functioning judicially would necessarily conclude that there was no negligence on his part. There being none, neither he nor Johnson and Baarts are responsible for plaintiff's injuries.

The question of plaintiff's contributory negligence is a close one. The body of a large horse (1,400 to 1,700 pounds) is a conspicuous object, and plaintiff's speed was not high. The truck was well beyond the horse and almost completely off the pavement. All other drivers who passed (there were a number of them) saw and avoided the carcass. Plaintiff claims to have had his attention diverted from the road to the truck. We think that his care or lack of it was a jury question.

The order denying Arnette's motion is affirmed; the orders denying Foster's motion and that of Johnson and Baarts are reversed with instructions to enter judgments in favor of Foster and of Johnson and Baarts notwithstanding the verdicts.