Herbert, J.
Defendants claim that the Court of Appeals erred in reversing the judgment of the Court of Common Pleas, which judgment was based upon a directed verdict for the defendants. In the opinion of the Court of Appeals, it is stated:
“However, we can not agree with the trial court that the defendant was entitled to an instructed verdict at the conclusion of all the evidence. The trial judge in arriving at his decision, says that ‘the exceptions set forth in paragraph three of the syllabus of the case reported and recorded in 131 Ohio St., 471, does not apply, and that the facts in the instant case do not give rise to a mixed question of fact and law which should be submitted to the jury as in the case reported in 132 Ohio St., 277.’ ”
The concluding paragraph of the opinion states:
“Inasmuch as the collision in question occurred on a public highway, surrounded as it was by the circumstances herein related, a situation was presented which should have been submitted to the jury.”
The record discloses that only four witnesses were present *170 ed by plaintiff and two by defendants. One of defendants’ witnesses was called simply to identify records with reference to the question of whether Zind Lane was an accepted highway, while the other one was the highway patrolman who testified regarding photographs taken by him the morning after the accident, which photographs were received in evidence. The latter was not cross-examined.
Of the four witnesses called by the plaintiff, the first one was defendant Baumgardner, called for cross-examination, whose testimony, besides establishing his relationship with defendant Jones, was directed chiefly to the placing of the trailer and leaving it without lights.
Plaintiff’s physician was the second Avitness, whose testimony related only to her injuries.
The fourth witness was the planning engineer of the Regional Planning Commission, and his testimony related only to the status of Zind Lane, which is not in issue.
As the husband was not called as a witness, that leaves only the testimony of the plaintiff herself to consider as to the facts pertaining to the collision. She testified:
“* * * A. Well, we started home and a dog ran out at the right front of my car and I tried to keep from hitting the dog and I SAverved and I ran right into the trailer.
“Q. Did you see the trailer at any time? A. No, sir.
“Q. Did it have any lights on it? A. No, sir.
“Q. Where Avas this trailer parked Avith respect to the road Avhich you were on? A. It occupied half or two-thirds of the road. It was sitting right in the middle of the gravel and it was on the left side. ’ ’
The photographs admitted in evidence, taken by the highway patrolman, shoAv that the trailer Avas a large house-trailer, was on plaintiff’s left side at the time of the collision, and occupied approximately a third of the graveled portion of the road, which Avas 14 or 15 feet Avide at that point.
Upon cross-examination, the plaintiff testified also:
“Q. You reported this accident to the Buckeye Casualty Company, did you not ? A. Yes, sir.
“Q. And you told them how it happened, didn’t you? A. Yes, I guess I did.
*171 “Q. Did you tell them anything about a dog? A. No.”
That is all the testimony in the record regarding the dog.
Although these facts relating to the dog, as well as the fact that the husband, the only other eyewitness, was not called to testify, are significant, they are not questioned here, and full credibility is given to plaintiff’s statement that “a dog ran out at the right front of my car.”
On cross-examination, she testified further:
“Q. Did you have your headlights on as you were going towards Route 42 out Zind Lane? A. My headlights were on dim.
“Q. What do you mean by that, parking lights? A. No. I had my regular headlights but they were on down like when you dim your lights to meet a car.
“Q. How far ahead did your headlights go, do you know, how far did they shine? A. I don’t know how far they shine.
“Q. Did the trailer ever appear in your headlights? A. I didn’t see the trailer until I hit it.
“Q. When did you determine the position of the trailer on the road? A. Well, when I hit it. It was in the middle of the road or I wouldn’t have hit it.
“Q. When did you determine the position of the trailer? A. When I hit it.”
There is no testimony in the record as to plaintiff’s speed at the time of collision, and, on the above-recited facts, the trial court directed a verdict in favor of defendants.
To test the correctness of the judgment of the trial court in directing the verdict for the defendants, the rule laid down by this court in the case of Hamden Lodge v. Ohio Fuel Gas Co., 127 Ohio St., 469, 189 N. E., 246, is controlling.
Paragraphs three and four of the syllabus of that case are pertinent here:
“3. Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential issue, after giving the evidence such favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him.
*172 “4. Where from the evidence reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence.”
Here, the plaintiff by her own testimony failed to discern the trailer in the path of her headlights right up until the time of collision. Apparently she was able to see a dog of undisclosed size coming toward the right front of her car out of the range of her headlights, but she never saw an aluminum trailer directly in the path of those same headlights.
As we view it, the trial court was correct in holding inapplicable the third paragraph of the syllabus in the case of Kormos v. Cleveland Retail Credit Men’s Co., 131 Ohio St., 471, 3 N. E. (2d), 427, which states:
“3. An operator who has failed to comply with the ‘assured clear distance ’ statute may excuse such failure and avoid the legal imputation of negligence per se by establishing that, without his fault, and because of circumstances over which he had no control, compliance with the law was rendered impossible. ’ ’
The facts there were that the defendant parked its car at the curb without lights after dark, and the plaintiff was unable to see such parked car just at and before the collision. Onjhose facts, this court affirmed the judgment of the Court of Appeals which rendered final judgment in favor of defendant.
In the opinion, Jones, J., stated (page 477):
‘‘The plaintiff below has advanced no legal excuse for a violation of the ‘assured clear distance’ statute. He testifies that his car was equipped with headlights with which he could see a pedestrian ahead of him for more than 200 feet. He does not explain why, at some point within that distance, he was unable to see the parked car. He says he did not see it until within five or six feet.”
On the facts here, assuming that plaintiff’s headlights were in compliance with the law, she had an opportunity to observe the trailer almost from the start of her drive down the lane.
In Gumley, Admr., v. Cowman, 129 Ohio St., 36, 193 N. E., 627, this court held:
‘‘1. The language of Section 12603, General Code, provid *173 ing that no person shall drive any motor vehicle in and upon any public road or highway at a rate of speed greater than will permit him to bring it to a stop within the assured clear distance ahead, is a specific requirement of law, a violation of which constitutes negligence per se. (Skinner v. Pennsylvania Rd. Co., 127 Ohio St., 69, approved and followed.)
“2. The present legislative requirement establishes a subjective test whereby a driver is prohibited from operating any motor vehicle in and upon any public road or highway at a rate of speed greater than will permit him to bring it to a stop within the distance at which he can see a discernible object obstructing his path.”
In that case, plaintiff’s decedent who was driving an automobile at about 6 a. m., before daylight, on “a misty, rainy morning,” at about 30 or 35 miles per hour, suddenly saw about 5 or 10 feet in front of him the rear of defendant’s truck loaded with hogs and moving forward very slowly with the right wheels on the right berm 16 or 18 inches from the improved portion of the road. The plaintiff’s decedent being unable to stop was killed by the collision. In the opinion (page 39), Weygandt, C. J., stated:
‘ ‘ To say that one can see at least 200 feet ahead but does not in fact see in his path a discernible object such as the defendant’s truck until within five or ten feet of it, presents a situation utterly irreconcilable with any theory except negligence of the plainest and simplest sort. Likewise, the question of proximate cause seems to require an answer too obvious to justify extended discussion.”
There, a witness for plaintiff, who had been riding in the decedent’s car, testified that he could see at all times at least 200 feet ahead. Here, on the other hand, the plaintiff herself stated that her driving lights were turned on but offers no explanation as to why she did not see the trailer until the time of collision.
In Matz, Admr., v. J. L. Curtis Cartage Co., 132 Ohio St., 271, 7 N. E. (2d), 220, paragraph 11 of the syllabus holds:
“Where the evidence adduced gives rise to conflicting inferences as to whether the negligence of the defendant tortfeasor was the proximate cause of injury and damage to the *174 plaintiff, a question of fact is presented for the determination of the jury under instructions of the court.”
In our view, the trial court here had no conflicting inferences to contend with, because the uncontradicted testimony of the plaintiff establishes, in addition to the admitted negligence per se of the defendant Baumgardner in leaving the trailer unlighted, her own negligence in failing to observe the trailer in the range of her headlights until the very moment of collision.
Counsel for plaintiff relies strongly upon the case of Massie v. Barker, 224 Mass., 420, 113 N. E., 199. The facts in that case are clearly distinguishable. There the plaintiffs were riding in a wagon, having turned to the right in response to a warning horn, and were injured by a collision with a motor truck coming from behind. Defendant’s truck driver testified that he saw the wagon in which plaintiffs were riding, when he was “a couple hundred feet back” of it, and was in the process of passing it to the left when a large sheep dog carne out of a drive, apparently on his left, and jumped in front of him.
The court in that case held in substance that the driver’s negligence was a question for the jury. He admittedly was alongside the wagon, having observed it for some distance when the claimed emergency arose.
While we are not ready to accept the logic of that decision, nevertheless we consider it inapplicable to the instant case because of the distinction of facts.
Section 4511.21, Revised Code, provides, inter alia, that “no person shall drive any motor vehicle * * * in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead. ’ ’
Here, the plaintiff, driving her motor vehicle on a public highway, failed to see a discernible static object, consisting of a large house-trailer constructed of aluminum which obstructed a portion of the highway, and was therefore negligent as a matter of law for violation of the foregoing provision. Her failure to discern such object at any time prior to collision therewith so as to be able to stop within the assured clear distance ahead is not excused by the operator’s indefinite testimony that the collision occurred during a sudden turn to the left to avoid striking the dog which ran out toward the right front of her motor vehicle.
*175 The judgment of the Court of Appeals is, therefore, reversed, and the judgment of the Court of Common Plea? is affirmed.

Judgment reversed.

Weygandt, C. J., Stewart and Taft, JJ., concur.
Zimmerman, Bell and Matthias, JJ., dissent for the reason that in their opinion the evidence in this case, taken in its entirety, presents a factual situation for the trier of the facts, as was determined by the unanimous judgment of the Court of Appeals.