WILLIAM WHELAN, BY WILLIAM J. WHELAN, HIS FATHER
AND NATURAL GUARDIAN, AND ANOTHER v.
GERALD M. GOULD.

106 N. W. (2d) 893.

December 23, 1960—No. 38,002.

*Douglass, Sheets & Bell, James R. Bell,* and *Richard L. Kelly,* for appellants.

*Lipschultz, Altman, Geraghty & Mulally* and *Roger R. Lenzmeier,* for respondent.

MURPHY, JUSTICE.

This is an appeal by both plaintiffs, William Whelan, a minor, and William J. Whelan, his father, from a judgment entered for the defendant, Gerald M. Gould.

This case grew out of a collision between two automobiles at an intersection. The jury by special findings determined that neither driver was at fault. It is the contention of the plaintiffs that the accident could not have occurred without negligence on the part of one or both of the drivers and that the verdict is perverse and inconsistent and cannot be supported by any theory of law.

The accident occurred on November 15, 1956, at about 6:30 p. m. during the first snowstorm of the season. William J. Whelan, who will be referred to here as plaintiff, drove west on Skillman Avenue in Roseville and approached the intersection of Hamline Avenue, a through highway which runs generally north and south. From the record the jury could have found that as the plaintiff approached Hamline Avenue he came to a full stop. He waited a short period of time and noted there was a car three-fourths of a block to his right on Hamline Avenue traveling south and another car about the same distance to his left on Hamline proceeding north. He proceeded into the intersection making a left-hand turn at approximately 10 miles per hour. After entering the intersection he noted that the car coming from the north was going faster than he had anticipated. As he was completing his turn into Hamline Avenue he saw the defendant's car through his rearview mirror and estimated that it was approaching at

the rate of about 40 miles per hour. He was about 40 feet beyond the intersection when his car was struck in the rear by the defendant's car. His automobile moved counterclockwise and collided with a car coming from the opposite direction. His 5-year-old son, who was accompanying him, sustained physical injuries.

The defendant testified that at the time and place of the accident he was driving south on Hamline Avenue at a rate of about 15 to 20 miles per hour and he described the weather as near "blizzard condition." Another witness testified that it was dark, windy, and snowing. When he applied his brakes near the intersection he noted that the pavement was slippery. Because of the slippery condition of the pavement he could not stop his car. He applied his brakes and turned his car to the right to avoid the collision, but the jury could have concluded that because of the slippery condition of the road he had no control over its direction.

The third car involved in the accident was driven by Donald Spotts, who also testified that the pavement was icy and slippery and that the traction was poor. When asked whether he observed that plaintiff's car was having traction difficulty, he answered, "Well, I was observing a lot of my own, * * * if it hadn't been for snow and ice there wouldn't have been any trouble at all, of course, but it seemed to be it [plaintiff's car] didn't pick up speed like it would under normal driving conditions."

The court correctly instructed the jury with reference to the law on right-of-way, paying particular attention to Minn. St. 169.20, subd. 3, which provides in part:

"The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway."

The instruction was in accord with the law stated in Schleuder v. Sol-

tow, 239 Minn. 453, 59 N. W. (2d) 320, and Kolatz v. Kelly, 244 Minn. 163, 69 N. W. (2d) 649, and with the theory upon which the case had been presented as spelled out by the pleadings and evidence. The jury was carefully instructed as to the standard of care required. They were told:

"The fact that an accident happened is not sufficient in itself to prove that either party was negligent in the happening of the accident. However, you have been asked to answer certain questions relative to negligence and proximate cause. You are not to concern yourselves with the ultimate legal effect of your answers in regard to whether or not either party or any party will recover from any other party."

No exceptions were taken to the instructions. The court then submitted to the jury special findings under Rule 49.01 of the Municipal Court Rules of Civil Procedure. The following questions were asked:

"1. Was William J. Whelan, the father, guilty of negligence which proximately caused the accident?"

"2. Was Gerald M. Gould guilty of negligence which proximately caused the accident?"

The jury answered both questions in the negative. The court is bound by the findings on a special verdict. Wormsbecker v. Donovan Const. Co. 247 Minn. 32, 76 N. W. (2d) 643.

The thesis of the plaintiffs seems to be that where two vehicles come together under the circumstances which were present here someone must be legally responsible. They argue that the jury in effect found that the accident was unavoidable and that such a finding cannot be sustained by the record.

There is no necessity for us to discuss the subject of unavoidable accident since neither party advanced that theory at the trial nor requested instructions on that subject. Moreover, a consideration of the label "unavoidable accident" would not be helpful since in most instances there is a time prior to the happening of the event when it might have been avoided by the exercise of a higher degree of prudence and foresight. We prefer to adopt the approach used by the trial court when he instructed the jury to judge the conduct of the

parties by what the ordinarily prudent man would do under the circumstances existing at the time and place of the occurrence.

The jury could well have found that the plaintiff was not negligent in entering the intersection as he did, and at the same time it could have found that the defendant was not negligent in approaching the intersection at the rate of speed at which he did. These were questions for the jury, and we think its findings are supported by the evidence. When the plaintiff saw the defendant's car three-fourths of a block away, as he testified, it did not constitute an immediate hazard which would deprive him of the right-of-way. The jury could have found that when he first left the stop sign and entered the intersection he was exercising due care. It could also have found that it was not reasonably foreseeable that he would have traction difficulty and that his movement through the intersection would be impeded by the icy conditions of the pavement. On the other hand, there was evidence from which the jury could find that the defendant was traveling at a moderate rate of speed under the circumstances. The defendant testified that he was traveling at the rate of 15 to 20 miles per hour; an independent witness estimated his speed at 30 miles per hour; while the plaintiff judged his speed to be 40 miles per hour as he approached the intersection. There was evidence from which the jury could find that, because of the poor visibility and the position of the plaintiff's car as it moved into the intersection with its lights directed away from him, the defendant was unable to see plaintiff's car until he was 20 to 30 feet from the intersection. The jury could also find that the defendant was not required to anticipate the slippery condition of the intersection which prevented him from stopping in time to avoid the collision. Apparently the jury found that the existing storm conditions and the slippery pavement upset the calculations of both parties and placed them in a position where they were helpless to avoid the collision. While the accident was not inevitable, and men of a higher standard of prudence and foresight might have avoided it, the jury could well have come to the conclusion that the parties exercised that degree of prudence, foresight, and caution which the law required under the existing circumstances, that the accident occurred without fault of either party, and that it was not occasioned by want of that

degree of care or skill which the man of ordinary prudence would exercise.

In Hardy v. Anderson, 241 Minn. 478, 481, 63 N. W. (2d) 814, 817, we said:

"* * * In the present case the jury could reasonably find that plaintiff's vision was obscured by the snow which covered defendant's automobile and caused it to blend with the surrounding street surface and that plaintiff, after he did see defendant's car, was prevented by the icy and slippery conditions of the road surface from bringing his car to a stop before the collision occurred. * * * a driver's conduct which under normal circumstances would constitute negligence as a matter of law may, nevertheless, give rise to a question of fact *when surrounding conditions and circumstances exist * * *.*"

The jury could well have arrived at the same conclusion as the witness Spotts, who testified that "if it hadn't been for snow and ice there wouldn't have been any trouble at all," and under the instructions given the jury could have properly found that the accident occurred while both parties were in the exercise of that degree of care which the law requires under the then-existing conditions.

Affirmed.