VIOLET V. KUETHER AND ANOTHER v.
EDWARD W. LOCKE.

110 N. W. (2d) 539.

September 8, 1961—No. 37,895.

*Dorfman & Rudquist, David McGannon,* and *John Ramstead,* for appellants.

*Rich & Johnson,* for respondent.

OTIS, JUSTICE.

The plaintiffs, Violet Kuether and Emil Kuether, appeal from an order denying their motion for judgment on the issue of liability notwithstanding verdicts in favor of defendant, Edward W. Locke, and for a new trial on the issue of damages only, or in the alternative for a new trial on all issues. Mrs. Kuether is hereinafter referred to as plaintiff.

This action arises out of a collision between the rear end of plaintiff's automobile and the front end of defendant's car, occurring October 28, 1957, at approximately 8:30 a. m. on a clear, dry morning. At the time of the accident Mrs. Kuether was driving in a northerly direction on Bloomington Avenue, approaching 25th Street, followed by defendant Locke. It appears that in the area involved, Bloomington is wide enough to permit two lanes of traffic in each direction in addition to a parking lane. At the intersection of 25th, Bloomington is a through highway not governed by semaphores. In the block between 26th and 25th an automobile traveling between the plaintiff and defendant moved out of its lane and passed the plaintiff, leaving defendant one or two car lengths behind as the two cars approached 25th. In that block both parties were traveling between 25 and 30 miles an hour. Plaintiff testified that as she approached the intersection of 25th Street, when the front end of her car was a little more than a car's length from the south crosswalk of Bloomington, she saw a dog dart or dash out from behind a building on her right, across the sidewalk and crosswalk, into the street in front of her car, "just stretched out he was running so fast." At the same time she noticed three children to her left on the sidewalk at the southwest corner of the intersection and heard them scream. Mrs. Kuether stated that the children stepped toward the street as though to run out for their dog. Her immediate apprehension was that the children might be struck by southbound traffic. She did not worry about hitting them with her own car. However, she was very

concerned that she might strike the dog. Consequently, without looking in her rearview mirror, she applied her brakes hard enough to make a sudden stop, or what she called a "short stop," somewhere in the south crosswalk of Bloomington, and was thereupon struck from behind by defendant's vehicle within a fraction of a second.

Plaintiff brought this action against defendant for personal injuries she alleges resulted from the collision, and her husband joined in asserting a claim for special damages he incurred. Defendant Locke counterclaimed for property damage to his vehicle. The verdict was for defendant Locke without damages. By the nature of the verdict the jury may have found both drivers negligent or neither.

The plaintiff asserts five assignments of error: That the jury should have been instructed she was free from negligence as a matter of law and that defendant was negligent as a matter of law; that it was error to submit to the jury the question of whether plaintiff complied with Minn. St. 169.19, subds. 6 and 7, governing signals to stop; that it was error to charge the jury that plaintiff was obliged to keep a lookout to the rear and to instruct the jury with respect to unavoidable accident.

■ In reviewing the evidence and the jury's verdicts, we are governed by the fundamental principles we recently restated in Lott v. Davidson, 261 Minn. 130, 136, 109 N. W. (2d) 336, 341:

"Conflicts in evidence are to be resolved by the jury. We must review the evidence and the inferences to be reasonably drawn therefrom in the light most favorable to the prevailing parties. It is only when different minds can reasonably arrive at but one result that fact issues become questions of law justifying a court in substituting its judgment for the jury. Where, as here, the verdict has the approval of the trial court and it is not manifestly and palpably contrary to the evidence viewed as a whole, it will not be disturbed."

Essentially all of the assignments of error hinge on the application of our emergency rule. That doctrine has been spelled out repeatedly in recent cases[1] and was correctly given to the jury in the following language:

---

[1]Brady v. Kroll, 244 Minn. 525, 530, 70 N. W. (2d) 354, 357; Minder v. Peterson, 254 Minn. 82, 89, 93 N. W. (2d) 699, 705.

"Now you recall in this case that there was evidence of a dog suddenly coming out into the road, and as to these drivers I want to give a rule that we sometimes call a sudden emergency rule: 'A person is not to be deemed negligent when, finding himself without his fault in the face of a sudden danger or emergency, he does not exercise the wisest judgment, nor is his conduct to be judged after the event solely by the result that did in fact occur. One faced with an emergency is bound to exercise only that caution and judgment which could reasonably be expected from an ordinarily prudent person under the circumstances.' "

Both drivers had the benefit of the rule, although we have no way of knowing how the jury applied it. They may have determined that the rule exonerated both drivers or neither.

This appears to be a case of first impression in Minnesota with respect to an emergency created by the sudden appearance on the highway of a small animal. Plaintiff cites in support of her position Wedel v. Johnson, 196 Minn. 170, 264 N. W. 689. There the defendant struck and killed a horse on the highway, as a result of which some time later the plaintiff was injured in a collision with the carcass. Our court held that by the time the defendant saw the animal it was too late to avoid a collision by putting on the brakes, and that in veering his car to the left he acted as a reasonably prudent driver under the emergency conditions as a matter of law. However, it should be noted that there was no rear-end collision with a vehicle following the defendant, or with any other car or pedestrian in the immediate area.

An important and perhaps decisive distinction in all of these cases is the question of whether a collision with the animal will in itself endanger the occupants of the colliding vehicle and other persons in the area, or whether, because of the size of the animal involved, the only danger is to the animal itself. The authorities are not in accord on the question of whether a driver confronted with an emergency created by the sudden appearance of an animal on the road is exonerated from liability as a matter of law in taking evasive action resulting in an accident. The Wisconsin court has held in two cases that a driver, in swerving to avoid a dog or a cat resulting in injury to passengers or to

the driver, is free from negligence as a matter of law.[2] The same result has been reached in Maryland,[3] but there the court pointed out that the consequences of hitting or running over the dog might have been even more disastrous than following the course the driver pursued.

Plaintiff places particular reliance on two cases—Cone v. Davis, 66 Ga. App. 229, 17 S. E. (2d) 849; and McDaniel v. Capitol Transport Co. (La. App.) 35 So. (2d) 38. In the Cone case a passenger was injured when a driver traveling on a country road made a sudden stop to avoid colliding with a hog and was struck from behind by the vehicle in which the passenger was riding. The court decided, among other things, that the emergency prevented the driver from giving the statutory signal by holding out his hand and arm because the window was rolled up. The court held as a matter of law that the first driver was not negligent in making a sudden stop to avoid hitting the animal and stated (66 Ga. App. 233, 17 S. E. [2d] 853):

"* * * If he had not attempted to avoid the consequences of hitting the hog, the result might have been more disastrous than that which followed the course he pursued. [Citing Burhans v. Burhans, 159 Md. 370, 150 A. 795.]"

It is significant also that the court's syllabus states that a driver confronted with a sudden peril is not negligent when he exercises his right to take care of himself and thus avoid death or bodily injury. Much the same fact situation was involved in the McDaniel case except that the plaintiff made a sudden stop to avoid colliding with three cows. The court stated that the driver of the first vehicle acted in the only manner reasonable under the circumstances by reducing his speed to bring it to a stop if necessary. The Louisiana court found no error in a decision in favor of plaintiff.

The rule which we believe should govern the liability of a driver confronted with an emergency created by the appearance of a small animal such as a dog is stated in Massie v. Barker, 224 Mass. 420,

---

[2] Olson v. Hermansen, 196 Wis. 614, 220 N. W. 203, 61 A. L. R. 1243; Scheibe v. Town of Lincoln, 223 Wis. 417, 271 N. W. 43.

[3] Burhans v. Burhans, 159 Md. 370, 150 A. 795.

113 N. E. 199. The defendant in that case was driving a truck and as he was about to pass a wagon a large sheep dog jumped in front of the truck. In attempting to avoid the dog, the driver swerved the truck and hit the wagon, causing injuries to its occupants. In that case, as in this, "the dog flashed by." In holding that the negligence of the truck-driver was a question of fact for the jury, the Massachusetts court stated as follows (224 Mass. 423, 113 N. E. 199):

"The law as to drivers of motor vehicles is not different from that which governs other persons. The standard required is that of the reasonably prudent person under all the circumstances. If some unforeseen emergency occurs, which naturally would overpower the judgment of the ordinary careful driver of a motor vehicle, so that momentarily or for a time he is not capable of intelligent action and as a result injury is inflicted upon a third person, the driver is not negligent. The law does not require supernatural poise or self control. But no one safely can drive motor vehicles amid the distractions and dangers likely to be encountered on the modern highway and street who is not reasonably steady of nerve, quick in forming an opinion and calm in executing a design. Whether the conduct of the defendant's agent measured up to the standard of common caution for the driver of a motor vehicle under all the circumstances, was a question of fact.

"* * * *Manifestly one exercising due care cannot hesitate in preferring the safety of human beings to that of dogs.*" (Italics supplied.)

There are cases in other jurisdictions dealing with related problems.[4]

It is obvious from the testimony of the plaintiff that the jury found she made a sudden stop because of the appearance of the dog:

"Q. [Counsel for defendant] It's this situation, isn't it: in a flash, with this situation confronting you, you didn't have time to have had any

---

[4]Annotation, 29 A. L. R. (2d) 60, § 12; Sills v. Meyers, 171 Misc. 63, 11 N. Y. S. (2d) 106; Becker v. Beir, 275 App. Div. 146, 89 N. Y. S. (2d) 536; Whitaker v. Baumgardner, 167 Ohio St. 167, 146 N. E. (2d) 729; Belfast v. Patterson, 77 Ohio L. Abs. 290, 149 N. E. (2d) 169; Williams v. Matlin, 328 Ill. App. 645, 66 N. E. (2d) 719; Chadwick v. Popadick, 399 Pa. 88, 159 A. (2d) 907; Sturdavant v. Covington, 3 Utah (2d) 14, 277 P. (2d) 814; Silverstein v. Board of Commrs. 8 La. App. 304.

thought. As soon as you saw that dog, as fast as you could get your foot on the brake you put it on the brake and put it on as hard as you could?

"A. I believe I did."

We therefore hold that when a driver is unexpectedly confronted with an animal on the highway, and a rear-end collision occurs as a result of his making a sudden stop to avoid striking the animal, it is a fact question for the jury as to whether the driver acted with reasonable care and prudence. In making its determination the jury should consider all of the surrounding circumstances, including the size of the animal and the likelihood of injury to the driver and passengers, or persons in a following vehicle, resulting from a collision with the animal, weighed against the possibility of injury which might occur from a sudden stop or from other evasive action to avoid the animal.

In support of the plaintiff's claim that the defendant was negligent as a matter of law, she points to the testimony that defendant saw the children at the intersection, observed the dog, and noticed plaintiff's brake lights before the impact. In view of the plaintiff's own testimony that she saw the whole picture at one time in a fraction of a second, it can hardly be said that the defendant should have had a better opportunity than she to observe and comprehend the developments. Until and unless problems arise which should alert him to the possibility of a sudden stop in front of him, the driver of a following car need not assume that he will be required to bring his vehicle to an emergency stop without adequate warning. This is especially true on a through highway. We decline to hold that under the circumstances of this case the collision itself was conclusive evidence that defendant was not following at a reasonable distance or that he did not have his car under sufficient control. These were proper questions for the jury to determine.

■ A more difficult question arises with respect to the court's instruction concerning the effect of Minn. St. 169.19, subds. 6 and 7, governing the signals for a sudden stop. The court charged the jury as follows:

"Another provision on signal to stop:

48

" 'No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear unless there is a good and sufficient reason for not being able to do so. The signals herein required shall be given either by means of the hand and arm or by a signal lamp.'

"This statute that I am reading from also specifies that in any civil action such as this a violation of its provisions such as I have read to you by any of the parties to the action shall not necessarily be negligence in and of itself but shall be *prima facie* evidence of negligence."[5]

It is plaintiff's contention that the instruction permitted the jury to find she violated the signaling statute and that the evidence does not warrant submitting the issue.

Subd. 6 of § 169.19 is exculpatory and for plaintiff's benefit to the extent it permits the jury to find there was "good and sufficient reason" for her inability to signal. Beyond that, however, we are of the opinion that the facts of this case do not justify a finding as a matter of law that plaintiff complied with the statute. In Ryan v. Griffin, 241 Minn. 91, 94, 62 N. W. (2d) 504, 507, Mr. Chief Justice Dell in an exhaustive opinion considered the reciprocal rights and duties of drivers of vehicles preceding and following one another. That case also involved a so-called rear-end collision. Among other things, the Chief Justice stated the law to be thus:

"* * * The driver of a leading automobile has no absolute legal right superior to the driver of the car following. The leading driver must exercise due care not to swerve, slow up, or stop without adequate warning of his intention to do so to the driver of the car following. The driver of the car following must exercise due care to avoid collision with the leading automobile. Just how close an automobile may be followed and what precautions a driver must take in the exercise of due care to avoid colliding with the automobile ahead and *just what warnings the driver of the leading automobile must give in the exercise of due care before swerving, slowing up, or stopping cannot be stated in a fixed*

---

[5]Minn. St. 169.96.

*rule*. In each case, except where reasonable minds may not differ, what due care requires and whether it has been exercised is for the jury." (Italics supplied.)[6]

Defendant here testified that he did not have adequate warning of plaintiff's sudden stop although he believed the plaintiff's brake lights went on. Mrs. Kuether herself testified that as soon as she saw the dog she put the brake on as hard as she could. We hold that whether the momentary flashing of a brake light is "appropriate" under the statute, or whether the circumstances called for a more effective signal, was a fact question for the jury. In this conclusion we are supported by respectable authority. Baltimore Transit Co. v. Prinz, 215 Md. 398, 137 A. (2d) 700, was an action brought by the driver and passenger in a vehicle which was struck from behind by a bus. Plaintiff testified that as she proceeded down the street at 25 or 30 miles an hour a dog stepped off the curb in front of her. She slackened her speed and had "just touched" the brake when the impact occurred. Maryland has signaling statutes almost identical to ours,[7] and the Maryland court held that the amount of warning the driver of the front car must give of his intention to slow up, and the precautions the driver of the rear car must take to avoid a collision, cannot be formulated into a precise rule but depended upon the facts and circumstances of each case. Specifically, the court held that whether the signal given by a brake light was appropriate under the circumstances was within the province of the jury to determine.

The United States Court of Appeals came to the same conclusion in United States v. First Security Bank of Utah (10 Cir.) 208 F. (2d) 424, 429, 42 A. L. R. (2d) 951, 959, where the court in applying the Utah law[8] regarding brake lights as a signal to stop held:

"\* \* \* A fair inference to be drawn from the testimony of Mardis and his wife is that the brake light signal which was given by the Vernon automobile was simultaneous with its sudden decrease in speed.

---

[6]See, also, Teas v. Minneapolis St. Ry. Co. 244 Minn. 427, 70 N. W. (2d) 358; Ondrachek v. Kettner, 256 Minn. 297, 98 N. W. (2d) 91.

[7]Md. Ann. Code 1957, Art. 66½, §§ 228 (c) and 229.

[8]Utah Code 1953, Title 41, c. 6, §§ 69(c) and 70.

Under such circumstances, the signal was not effective and was not in compliance with the statute which provides that an appropriate signal must be given prior to stopping or suddenly decreasing the speed of a vehicle."

Under a statute which provided that a signal to stop by use of the hand and arm need not be given if a vehicle is equipped with a brake light,[9] the Missouri court has observed that since the electrical signal only functions upon the application of the brakes, if the stop is sudden and abrupt, so is the warning, and has held that under such circumstances the automatic signal was inadequate or untimely. White v. Rohrer (Mo.) 267 S. W. (2d) 31, 35.

The United States Court of Appeals recently had occasion to construe the North Dakota statutes[10] governing an "appropriate" signal to stop which, like the Minnesota statutes, provide that such signal may be by means of the hand and arm or by a signal lamp. In a lawsuit which involved, among other things, a rear-end collision on the highway, the Federal court held that where a driver suddenly applied his brakes with force, and caused a collision with the car behind, the failure of the first driver to signal until he depressed the brake pedal furnished an adequate basis for a finding that the flashing of the brake light was not an appropriate signal under the circumstances. Johnson v. Hill (8 Cir.) 274 F. (2d) 110, 114. We decline to follow Wilburn v. Gordon, 209 Miss. 27, 45 So. (2d) 844, and Tesch v. Wisconsin Public Serv. Corp. 2 Wis. (2d) 131, 85 N. W. (2d) 762, cited by plaintiff as authority for reaching a contrary conclusion. The Minnesota cases cited by plaintiff are not inconsistent with this result.[11] What constitutes an appropriate signal must depend in every case on the necessity for, and the driver's opportunity to give, an effective warning commensurate with the probable hazards involved. Accordingly, we hold that it was proper to submit to the jury the provisions of § 169.19, subds. 6 and 7, in the manner indicated.

---

[9]16 Vernon's Ann. Mo. Stat. § 304.020(8 and 11).

[10]N. D. Century Code, § 39-10-38, par. 3, and § 39-10-39, par. 1.

[11]Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945; Landeen v. DeJung, 219 Minn. 287, 17 N. W. (2d) 648; Benson v. Hoenig, 228 Minn. 412, 37 N. W. (2d) 422.

■ Plaintiff's fourth assignment of error involves the following part of the court's charge:

"It is the duty of the driver of any motor vehicle to keep a lookout as to traffic conditions that affect him, whether to the front or the sides or the rear, * * *."

No authority is cited in support of the claim that this was an inappropriate instruction. We hold that it was manifestly proper. It was plaintiff's duty to determine what effect a sudden stop would have on other traffic, and she obviously could not make this decision without determining whether there were cars to the rear. On a well-traveled highway it is reasonable to assume that other automobiles may be following in line, and the jury had a right to consider whether under the circumstances of this case prudence required plaintiff to glance at her rearview mirror before coming to a sudden stop.

■ Although the plaintiff claims the court charged the jury with respect to an unavoidable accident, the record does not bear her out. However, in describing the claims of the parties, the court did state that defendant took the position that the accident did not occur as the result of the negligence of anyone, "it just was an accident that happened." Later in the charge the court stated:

"* * * The mere fact that an accident happens, considered alone, does not support any inference that any party to this action was negligent."

Except where the doctrine of res ipsa loquitur is involved, this admonition is almost routinely given in negligence cases. It is a proper cautionary instruction which has to do with the burden of proof rather than unavoidable accident. In any event, what we said in Whelan v. Gould, 259 Minn. 203, 207, 106 N. W. (2d) 893, 895, is peculiarly appropriate:

"* * * While the accident was not inevitable, and men of a higher standard of prudence and foresight might have avoided it, the jury could well have come to the conclusion that the parties exercised that degree of prudence, foresight, and caution which the law required under the existing circumstances, that the accident occurred without fault of

either party, and that it was not occasioned by want of that degree of care or skill which the man of ordinary prudence would exercise."[12]

For the reason stated, the issues submitted by the court were proper for consideration by the jury, and the order is affirmed.

---

[12]See, also, Otto v. Sellnow, 233 Minn. 215, 225, 46 N. W. (2d) 641, 646, 24 A. L. R. (2d) 152, 160; Brehm v. Lorenz, 206 Md. 500, 508, 112 A. (2d) 475, 479 (a sudden stop because of a cat).