# LORAYNE TIBBETTS v. ROGER C. NYBERG AND ANOTHER.

150 N. W. (2d) 687.

May 5, 1967—No. 40,342.

*Jerome E. Kline,* for appellant.

*Carroll, Cronan, Roth & Austin* and *Thomas A. Foster,* for respondent Dodge.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II, Mary Jeanne Coyne,* and *G. T. MacIntosh,* for respondent Nyberg.

OTIS, JUSTICE.

Plaintiff, a passenger in a car struck from the rear by another automobile, has brought an action for personal injuries against both drivers. The verdict was for defendants and plaintiff appeals from the judgment. The issue is whether the court erred in failing to instruct the jury that as a matter of law plaintiff was entitled to recover against one or both of the defendants. We have concluded that it did not.

The collision occurred at 6:30 a. m. on September 8, 1961, in the city of Minneapolis. Defendant Dodge was approaching West Lake Street on East Calhoun Boulevard when the automatic traffic signal changed from green to amber, causing him to make what he described as a "fairly abrupt" stop. The pavement was wet. Defendant Nyberg, who was one or two car lengths behind the Dodge car, skidded into it. Nyberg stated that he was traveling only 2 or 3 miles an hour and that the impact did not move the Dodge car forward nor cause any damage to the Nyberg vehicle. The only effect on the Dodge vehicle was a dent in the rear bumper for which Dodge was compensated by Nyberg's insurer, although the damage was never actually repaired. The impact was not sufficient to propel a purse and thermos from the front seat to the floor of the Dodge car. When asked if they were hurt neither Mrs. Dodge nor Mrs. Tibbetts complained of any injury. The police were not called to the scene, and Mrs. Tibbetts continued on with Mrs. Dodge to the firm where they were both employed.

Plaintiff testified that on the morning of the accident, while working as a drill press operator, she experienced dizziness, blurred vision, and nausea. Since Mrs. Dodge was also feeling ill, they both consulted doctors that afternoon. Plaintiff received some 23 therapy treatments from a Dr. Arvidson and did not return to work for about a month. Thereafter she consulted Dr. Leonard Titrud who examined her on four different occasions but gave her no treatment. He made the following diagnosis:

"That she had a complaint and findings that would fit along with a patient having a contusion and strain type of injury of the soft tissues along the cervical, thoracic and lumbrosacral spine."

X rays and electroencephalogram studies were negative. Although Mrs. Tibbetts complained of a hearing deficiency and consulted a specialist for treatment, her hearing was found to be normal. When Dr. Titrud examined her at the time of trial, she complained that she had noise in her ears, that she was dizzy and nauseated, had headaches every day, experienced periodic fainting spells, suffered visual blurring, pain in her neck and in the low back region, had difficulty

sleeping, weakness and pain in her legs, and cramps and numbness. Dr. Titrud concluded that plaintiff had some tenderness in her neck and muscle spasm in her neck and back. However, she declined his advice to enter the hospital for further examination and treatment. He testified that in his opinion, as a result of the accident, she suffered permanent dizziness, headaches, and pain in her neck, low back, and legs.

Plaintiff's attending physician, Dr. Arvidson, did not testify. At the time of the trial he was apparently ill. However, no attempt was made to take his deposition or otherwise to introduce the records of his care and treatment. Plaintiff at first denied, then upon the prompting of her attorney admitted, that in May 1961 she was in another collision which resulted in some injury to her foot. Mrs. Dodge testified that plaintiff had intermittently missed work between the two accidents, and although plaintiff claimed the time she lost following the second accident was entirely attributable to her injuries, she later conceded that for about 2 weeks she was home taking care of her husband who had himself been injured from an unrelated cause. Her employer did not testify concerning the number of days of work she missed. She stated she thought she had given her attorney a written work record prepared by her employer. Her attorney denied in open court that he had received it.

On this record, we are of the opinion that the trial court was correct in refusing to require the jury to award damages against one or both of the defendants. Because there was a general verdict, we cannot determine whether the jury decided that plaintiff failed to sustain her burden of proving negligence and proximate cause, or whether the jury simply found that Mrs. Tibbetts' complaints did not result from the accident. We believe the jury was justified in exonerating defendants on either theory.

■ In a number of recent cases we have held that rear-end accidents do not necessarily give rise to liability as a matter of law.[1] Although

---

[1] The rules and cases are well summarized in Connaker v. Hart, 275 Minn. 289, 146 N. W. (2d) 607. See, also, Ryan v. Griffin, 241 Minn. 91, 94, 62

human experience suggests that in the absence of unusual or extenuating circumstances such collisions do not occur unless one or both of the drivers are negligent, it remains the obligation of the injured party to prove by a fair preponderance of evidence which driver was negligent and whether such negligence was a proximate cause of plaintiff's injuries. The jury could here find that plaintiff did not sustain that burden. In Whelan v. Gould, 259 Minn. 203, 106 N. W. (2d) 893, we were confronted with a similar situation where a plaintiff was a passenger in a car which was struck from the rear and the jury exonerated both drivers. There we said (259 Minn. 207, 106 N. W. [2d] 895):

"* * * While the accident was not inevitable, and men of a higher standard of prudence and foresight might have avoided it, the jury could well have come to the conclusion that the parties exercised that degree of prudence, foresight, and caution which the law required under the existing circumstances, that the accident occurred without fault of either party, and that it was not occasioned by want of that degree of care or skill which the man of ordinary prudence would exercise."

On the liability issue we hold that the Whelan case supports the ruling of the trial court and governs our decision.

■ With respect to the issue of damages, the jury could find that whatever may have been plaintiff's physical condition following the accident, it was not attributable to the collision. Although Mrs. Tibbetts claims that she was severely jolted and thrown about by the impact, and asserts that she suffered the most excruciating and persistent pain for several years thereafter, her testimony was not convincing. The doctor who treated her did not testify and the doctor who testified did not treat her. The jury could infer that her physical complaints were largely psychosomatic. She was less than candid in several important particulars, and it is obvious the jury found that her version of the accident and the recitation of her physical complaints were greatly

N. W. (2d) 504, 507; Pluwak v. Lindberg, 268 Minn. 524, 532, 130 N. W. (2d) 134, 140.

exaggerated. Based on what we consider a preponderance of the evidence, the jury was justified in deciding that Mrs. Tibbetts' problems stemmed from psychological difficulties unrelated to the collision. For the reasons stated, we have concluded that the verdict should not be disturbed.

Affirmed.